MINNIE BUSBY et al. v. ELIZABETH SELF et al.,
Appellants, and LUCY JOHNSON.

Division One, July 19, 1920.

1. **QUIETING TITLE: Action at Law: Facts on Appeal.** A proceeding under Section 2535, Revised Statutes 1909, to ascertain and determine the title to land, with a prayer for partition among the parties who shall be adjudged to be the owners, where the issue is whether some of the parties are children or collateral kindred of the intestate, is an action at law; and the findings of fact, found by the trial court sitting as a jury, no declarations of law being asked or given, are on appeal entitled to the same force as a verdict of a jury upon the same issues would be.

2. **LEGITIMACY: Children Born to Married Woman: Subsequent Marriage to Their Father.** The words of the statute (Sec. 341, R. S. 1909) declaring that "if any man, having by a woman a child or children, shall afterwards intermarry with her, and shall recognize such child or children to be his, they shall thereby be legitimated," are words of remarkable breadth and clearness, referring distinctly to all men and women, and avoiding the word "unmarried" or any other word of limitation, and leave no room for disgusting inquiry as to the parentage of children, or whether at the time they were born the mother was lawfully the wife of another man, from whom she was divorced and subsequently married their father.

3. ———: ———: ———: **Recognition.** So far as the guilty father of children born of a married woman is concerned, his subsequent marriage to her, after she had been divorced from a former husband, and his recognition of the children as his, are equivalent to the adoption provided by statute in other cases.

4. ———: ———: **Presumption.** The subsequent marriage by the father to the mother of children born out of wedlock and his recognition of them as his children place them in the same favorable position, under the statute, as one born during wedlock; and such a child, after such recognition, can only be rendered a bastard by the same kind of proof that is required to overcome the presumption of the legitimacy of a child born in the course of wedlock.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*Frank H. Farris, John M. Stephens* and *H. L. Shannon* for appellants.

(1) The respondents and the defendant, Lucy John-son, to sustain the judgment in this case, rely on the pro-visions of Sec. 341, R. S. 1909. For the purpose of proving their descent from Frederick Molesdale, they were per-mitted to introduce testimony tending to show that the said Frederick sustained illicit relations with his step-mother, Jane Molesdale, while she was living and cohabit-ing with his father, Isaiah Molesdale. The law does not recognize such evidence as having any probative value. Jackson v. Phalen, 237 Mo. 142; Strode v. Ma-gowan, 2 Bush (Ky.) 621; Sergent v. Cumberland Mfg. Co., 112 Ky. 888, 66 S. W. 1036; Powell v. State ex rel. Fowler, 95 N. E. 660; Foote v. State, 144 S. W. 275, 65 Tex. Crim. App. 368; Flint v. Pierce, 136 N. Y. Supp. 1056. (2) While it has been held that the provisions of the above statute are available to an adulterine bastard, the cases so holding are based on testimony wholly dissimilar to the evidence in this case, the issue in such cases being the offspring of the cohabitation of a married man with a single woman, or of either a married or single man with a married woman who was living separate and apart from her husband during the entire period of pregnancy under such circumstances as to make it wholly improb-able and practically impossible that copulation could have taken place between her and her husband during the en-tire period of time when conception could have taken place. Miller v. Pennington, 218 Ill. 220, 1 L. R. A. (N. S.) 773; Hawbecker v. Hawbecker, 43 Md. 516; Drake v. Hospital Assn., 266 Mo. 1; Ives v. McNicholl, 59 Oh. St. 402, 69 Am. St. 780. (3) Isaiah Molesdale and Louisa Jane Woods were married in Crawford County, on Sep-tember 9, 1863. Lucy Johnson was born on the 6th day of April, 1867. Ezra Molesdale was born on the 21st day of December, 1868. Mary Ellen Molesdale was born some time prior to the birth of Lucy Johnson. The youngest child of Isaiah and Louisa Jane Molesdale was born some time subsequent to the birth of Ezra Molesdale. From the date of their marriage till some time after the birth of the youngest child, which must have been not earlier than

the latter part of 1869, Isaiah Molesdale and Louisa Jane Molesdale lived together as husband and wife. The elopment probably did not occur till about 1872, and Frederick and his step-mother were not married till September 9, 1874. From 1863 when Isaiah Molesdale and Louisa Jane were married they lived together continuously till Louisa Jane eloped with Frederick and during that time Isaiah Molesdale was not absent from home more than one week at a time. Isaiah Molesdale was a prolific progenitor, having had two children by his first wife, one by his second and four by his third. Louisa Jane Molesdale was a young woman when she eloped with her step-son, Fredrick, and while she lived with him continuously thereafter, no child was born as a result of her cohabitation with him. Under such circumstances the presumption that Isaiah Molesdale was the father of Lucy Johnson and Ezra Molesdale is practically conclusive. Scanlan v. Walshe, 48 Am. St. (Md.) 488. (4) Where children are born to a man and woman while living together in lawful wedlock, the only evidence that will be admitted to prove the illegitimacy of the children is either that the putative father was impotent, or that he was absent and had no access to his wife during the time when conception must have taken place. Scanlan v. Walshe, 48 Am. St. 488; Wright v. Hicks, 56 Am. Dec. 451; Cross v. Cross, 23 Am. Dec. 779; Commonwealth v. Shepherd, 6 Am. Dec. 449; Eloi v. Mader, 38 Am. Dec. 192. (5) As a rule the declarations of a husband or wife concerning children born in wedlock are inadmissible to prove the illegitimacy of such children. Niles v. Sprague, 13 Iowa, 198; Crawford v. Blackburn, 77 Am. Dec. 323; Cross v. Cross, 23 Am. Dec. 778; Simon v. State, 37 Am. St. Rep. 802.

*J. D. Harris* for respondents.

(1) Appellants contend in effect that where a child is born in wedlock its legitimacy of that wedlock is conclusively presumed, unless it is conclusively shown that

the husband of the marriage is impotent, or that there is no possibility of access on his part to the wife during the period of conception and gestation. To this contention in this case the respondents make two answers: First. That the children, whose parentage is here in question, namely, Elizabeth Johnson and Ezra Molesdale, were conceived after the separation of Louisa Jane from Isaiah W. Molesdale, when Isaiah W. could not have had access at the period of conception. Second. If these children were conceived before the separation of Isaiah W. and Louisa Jane Molesdale, still, the presumption of legitimacy of these children to the marriage of Isaiah W. and Louisa Jane is not conclusive but may be overcome, and that it may be overcome without the proof of impotency upon the part of Isaiah W. Molesdale or without the proof of absolute absence and inaccessibility on his part. (2) The presumption may be overcome "by any competent testimony sufficient to satisfy the mind of the tribunal before whom the question is made, to the contrary." State v. Shumpert, 1 S. C. 85; Shuler v. Bull, 15 S. C. 421; Wilson v. Babb, 18 S. C. 72; Con. v. Wentz, 1 Ashm. (Pa.) 269; Comm. v. Shepherd, 6 Binn. 283, 6 Am. Dec. 449; Irwin v. Bailey, 123 N. C. 628; Wright v. Hicks, 12 Ga. 155, 56 Am. Dec. 451; State v. McDowell, 101 N. C. 734, 7 S. E. 785; Breidenstein v. Bertram, 198 Mo. 328; Adger v. Ackerman, 115 Fed. 124. (3) Under the facts of the case at bar it would be a harsh rule to deny the children of Frederick Molesdale the rights of heirship in his property and cast his estate on his collateral heirs.

BROWN, C. —This cause was instituted in the Circuit Court of Jasper County, in 1916. The petition states that on the 10th of June, 1916, Frederick Molesdale died seized in fee simple of two hundred acres of land and certain town lots, all fully described, situated in said Jasper County, leaving as his only heirs at law defendant Lucy Johnson, his daughter, and the plain-

tiffs Minnie Busby and Beatrice DeBow, his grandchildren, who are seized of said estate in fee, the plaintiffs being each seized of an undivided one-fourth and the defendant Lucy Johnson of an undivided one-half. That the defendants Elizabeth Self, Edward Molesdale, Maud Kell, Ora Imhoff, Preston Hickman and Fred Hickman claim some right, title or interest in and to said property, of the nature of which plaintiffs are not advised and are therefore unable to state the same. That the deceased left no indebtedness; that administration had been granted of his estate and that there is ample personal property to pay the funeral expenses and other expenses and liabilities. The prayer is that the court ascertain and determine the interests of the respective parties and partition same accordingly.

Lucy Johnson answered admitting the allegations of the petition to be true. All the other defendants answered admitting the ownership of the intestate as stated in the petition, denying generally the other allegations of the petition and saying that the intestate left surviving him as his only heirs the following named persons: "Minnie Busby, a niece of the half blood; Beatrice DeBow, a niece of the half blood; Lucy Johnson, a sister of the half blood; Elizabeth Self, a sister of the whole blood; Edward Molesdale, a brother of the half blood; Maud Kell, a niece of the half blood, and Ora Imhoff, a niece of the half blood, of the said Frederick Molesdale, and that the said heirs are the owners, and entitled to share in said real estate the following interests therein, to-wit: The said Lucy Johnson is the owner and entitled to an undivided one-sixth interest, the said Elizabeth Self is the owner and entitled to an undivided one-third interest, the said Edward Molesdale is the owner and entitled to an undivided one sixth interest, the said Maud Kell is the owner and entitled to an undivided one-twelfth interest, the said Ora Imhoff is the owner and entitled to an undivided one-twelfth interest, the said Minnie Busby is the owner and entitled to an undivided one-twelfth interest and the

said Beatrice DeBow is the owner and entitled to an undivided one-twelfth interest, in and to said real estate." They join in the prayer for partition.

The cause came on for trial, and after hearing the evidence the court found the allegations of the petition to be true, and entered its decree that the land be sold and the proceeds distributed among the plaintiffs and the defendant Lucy Johnson according to their respective interest as therein stated. This appeal is taken from the interlocutory judgment so entered. The sole question presented here is whether Ezra Molesdale, the father of plaintiffs, and the defendant Lucy Johnson were within the meaning of the statute relating to descents and distributions children of Frederick Molesdale. If so, the judgment appealed from is right; if not, it is wrong and the defendants and plaintiffs would, as collateral heirs of Frederick Molesdale, take the entire estate.

The facts are very simple. Isaiah Molesdale, the ancestor of all the parties, resided in Lancaster England where he married a wife by whom he had two children: Frederick Molesdale, this intestate, and Elizabeth Molesdale who, as Elizabeth Self, is the principal defendant in interest. The wife died, and he married another wife in England, by whom he had one son, the defendant Edward Molesdale, who never came to America. He divorced his second wife or she divorced him; it makes no difference which, and she retained the child. In 1857 he came to America, bringing with him his two children, Frederick, then sixteen years old, and Elizabeth, then about three years younger. They settled in Crawford County, Missouri.

In August, 1862, Frederick enlisted in the National Army, and served during the remainder of the Civil War, being mustered out in August, 1865, at Steelville. He then came to live with his father, who had in 1863, married Louisa Jane Woods, a girl much younger than Frederick, who continued a member of the family, and whose association with the girl step-mother is the ground

in which the seeds of this miserable controversy were planted. It is said in the testimony that before his enlistment Frederick was "keeping company" with the girl and that his father told her he had been killed, but this was very possibly idle gossip. At about the time of this reunion, Mary Ellen was born to the newly married pair. Her paternity is not questioned. She grew up and married and became the mother of the defendants Mrs. Imhoff and Mrs. Kell. After Frederick came home the father operated a mill, which he owned seven or eight miles distant from his residence, and where it appears he frequently remained through the week. During this time friction arose between the father and son concerning the association of the latter with his step-mother, and this had arrived at such a bitter stage at the time Mrs. Johnson was born, which was about one and a half years after the return of Frederick, that the father, who was in the yard with his horse when his wife became ill, refused to obtain a doctor, and rode away, leaving her in the yard, where the child was born. It is unnecessary to follow the revolting story which this proceeding has sown broadcast, further than to say that the ill-assorted husband and wife continued to live together in Crawford County after this event. Ezra was born, and afterward another child. These the husband disowned. The last one died in infancy, but before its death he formally disowned it. Finally Frederick and his step-mother left Crawford County, taking all the children with them; first going to Kansas and afterward, returning to Missouri, they settled in Jasper County, where they lived as husband and wife, raised and educated the two children. Lucy and Ezra, accumulated the estate in controversy and died. The old man wanted the child Mary Ellen, which he claimed as his own. Mrs. Self and her husband were unwilling that he should go after it and accordingly it was arranged that Mr. Self should go and get her under the pretense that he desired to educate her. This he did. In the meantime the mother had gone to Crawford County and obtained a divorce from her

husband and married the father of her children. It is unnecessary to say that this was done with the acquiescence of the family, for it is impossible to imagine that it could have been accomplished otherwise.

When Isaiah W. Molesdale died in 1893, W. J. Self, husband of the defendant of that name, took out letters of administration in the Probate Court of Crawford County on his estate. The sworn application enumerated the sole heirs as Frederick Molesdale, of Jasper County; Elizabeth Self, of Crawford County; Mary Ellen Malcolm (deceased) of Crawford County, and W. E. Molesdale, of England, whom we have called Edward. These are the four children that he acknowledged. The list includes neither Ezra nor Mrs. Lucy Johnson. Mr. Self died before fully administering the estate, and the defendant Mrs. Self was appointed his administratrix and made final settlement in the Molesdale estate on this basis.

I. This is primarily an action to try title under the provisions of Section 2535, Revised Statutes 1909. Partition is asked among the parties who shall be adjudged the owners. The petition charges the plaintiffs and the defendant Mrs. Lucy Johnson to be the sole owners as against the other parties named as claimants and asks judgment accordingly. The issue as made by the pleadings relates solely to the legal title and was tried by the court without a jury, and without declarations of law asked or given, so that the findings of the court are entitled to the same force as the verdict of a jury upon the same issue. For that reason we will presume the existence of facts pertinent to the issue which the evidence tends plainly to support by the preponderance which the law requires upon the particular issue, which is whether, as the court found, the respondents are the sole owners of the premises in question by inheritance from Frederick Molesdale who is admitted to be the common source of title. We have already stated the principal facts relating to this ques-

tion, and will as we proceed make further reference to them if necessary.

The question is whether Ezra Molesdale, the father of the plaintiffs, and defendant Lucy Johnson, were, under the provisions of Section 341, Revised Statutes 1909, shown to be the legitimate children of Frederick Molesdale. The cause was tried by

Legitimacy.

the appellants upon the theory that children born in wedlock are conclusively presumed to have been begotten by the husband until its impossibility is shown. This ancient doctrine, borrowed from the civil law, has been modified from time to time to conform to the circumstances of particular cases or the idiosyncrasies of particular judges, but these modifications have frequently tended to defeat or impair one of the principal objects of the rule by the public exhibition in court of matters calculated to suffuse with blushes even the judicial cheek. The rule rested upon the preservation and encouragement of public morality, with incidental protection to the child born in lawful wedlock from the stigma of illegitimacy, and with no thought of the moral right that the innocent child might have against his guilty progenitor for the same protection. Nor did it take into consideration the subjection of the adulterine child to the tender mercies of a father forced upon it by law and who would treat it as an interloper.

The Legislature, which speaks as the mouthpiece of the public policy of the State, held all these things in careful consideration when it enacted this section. While it did not abate one jot in its condemnation of immorality, it looked broadly to the protection of the innocent and wronged and helpless child, giving the guilty an opportunity to redress, as far as possible, the wrong they had perpetrated against their own children, and the outraged husband the opportunity, without the duty, to surrender the result of his connubial shame to its natural protection. Bearing these things in mind we will read the law. It refers distinctly to every "man, having by a woman a child or children." This is an expression of

remarkable breadth and clearness. It refers distinctly to all men and all women, avoiding in each case the word unmarried or any other word of limitation. The succeeding words "shall afterward intermarry with her" is equally expressive, and refers to the time as any time when the two shall become husband and wife, and the section then proceeds to state that such child or children shall be legitimated by his recognition of them. Every word of the section is plain, simple and unequivocal, and leaves no room for doubt or misunderstanding. Nor does it leave any room for disgusting inquiry as to the parentage of the children. The elements of decency and morality are intimately and skillfully blended with the elements of justice. It is clean. So far as the guilty father is concerned, the marriage and recognition are equivalent to the adoption provided for by statute in other cases. One cannot read the section without admiration for the delicacy with which the Legislature has refrained from providing that all the shameful circumstancs be made a matter of public record and in that form hung around the neck of the only innocent party to the transaction. It will be noted that when the parties are married the act of the husband alone creates this relation and his estate alone is involved in this proceeding. The court has found from evidence that could lead to no other result, that he claimed Lucy and Ezra as his own natural children; that the former husband, in whose yard one of them was born, charged him with their paternity and surrendered them into his custody. The record shows that the marriage through which the children were legitimated was performed later, and after Frederick and his step-mother wife had lived together in Jasper County as husband and wife for at least two or three years. From the circumstances of this marriage it is evident that there was an agreement between the father and son as to the status of these children. She went to Crawford County, the home of her husband, to procure a divorce which could alone make possible a marriage with the son, and having procured it went back to her

new home in Jasper County where the ceremony seems to have been performed. All these appellants claim as collateral heirs of Frederick by descent through his father and are bound by the status which he lawfully created.

The question we have considered is not a new one, but has been before this court on many occasions and has in every case been decided in accordance with these views. [Drake v. Hospital Association, 266 Mo. 1; Nelson v. Jones, 245 Mo. 579; Breidenstein v. Bertram, 198 Mo. 328; Gates v. Seibert, 157 Mo. 254; Johnson v. Johnson's Admr., 30 Mo. 72; Adger v. Ackerman, 115 Fed. 124.]

II. Having reached the conclusion that by the operation of the statute we have been considering the marriage of Frederick to the mother of Lucy and Ezra and taking them into his home and recognizing them as his own natural children legitimated them as such for all purposes, including that of inheritance, the finding of the court on the issue of their legitimacy leaves little more to be said. This little we will say simply by way of caution.

*Prior Conduct.*

We have already said that the provisions of Section 341 were laid by the Legislature upon the same foundation of decency and justice that already supported the presumption of legitimacy by birth in lawful wedlock. It gave the parties the right, by convention, to close the book in which was written the shameful story of wrong and infidelity and to seal it with the seal of repentance and reparation which could not be broken by themselves or by those whom they had the power to bind in the distribution of their several estates. That by compliance with the terms of the statute the doubtful paternity of the offspring is settled to the extent that they become legitimate children of the conventional father by its operation, we have no doubt. Nor do we doubt that under the conceded facts of this case the trial court could not have reached a different conclusion than that announced by its judgment.

In this case the children are here not only acquiescing, but strenuously asserting their conventional and statutory parentage. We do not desire to be understood as expressing any opinion upon the question whether or not they might, on sentimental or material grounds, dispute it in a proper proceeding. The most solemn contracts may be avoided for fraud or mistake, and there is some reason in the proposition that legitimation by statutory convention is not more conclusive in its character than the legitimacy which arises from birth in lawful wedlock.

This feature was ably referred to by a very eminent Judge of the United States Circuit Court of Appeals of this circuit in Adger v. Ackerman, supra, a case arising under this same statute. He said (p. 136): "In the present case it is not necessary to adopt the extreme view that recognition of an illegitimate child by a man who has married its mother is conclusive proof of paternity which no evidence can overturn, and hence that the legitimacy of a child born out of wedlock, if it is recognized, by force of the statute is placed on a firmer foundation than the legitimacy of a child born in lawful wedlock, and no decisive opinion need be expressed on that point. I think that it is true, however, that by the recognition of a child born out of wedlock, under the circumstances aforesaid, such a child is placed in the same favorable position as one born during wedlock; that it can only be rendered a bastard, after such recognition, by the same kind of proof which is required to overturn the legitimacy of a child born in the course of wedlock; and that it is entitled to the benefit of the same presumptions."

There being no evidence in this case to overthrow the statutory presumption of legitimacy founded upon the acts of the parties, the judgment of the Circuit Court for Jasper County could not have been otherwise, and it is accordingly affirmed. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson, J.,* absent.