CLARA ALBERTA GREEN LOWTRIP and WINCE LOWTRIP, Plaintiffs-Appellants, v. WILLIAM GREEN, GEORGE W. GREEN, ASA GREEN, DELPHIA McCORMACK, ELIA SCHWARZ, DELIA DARLING, VIOLET INSKEEP, CANNIE STEPHENSON, CLEORA GREEN, BERTHA CLEMENTS, IDA B. STEPHENSON, FRED L. GREEN, EDWARD P. GREEN, MYRTLE WILLARD, CORA HANKS, RALPH W. GREEN, LYLE GREEN, NORMAN L. GREEN, JOHN D. GREEN, WM. A. GREEN, IRIS RACKLEY, RUBY LOWE, ELMER H. GREEN, ALTA TOBIAS, DELLA BENTON, W. S. HALE, JOHN K. HALE, EVERETT M. HALE, DOLA HALE, LULA HENRY, DELPHA ROBERTSON, P. GREEN PATTERSON, BESSIE STROME, CLARA MORRIS, and the unknown heirs of SAMUEL GREEN, Deceased, and ALLIE STEPHENSON, Deceased, and the unknown heirs of JAMES P. GREEN, Deceased, if any, Defendants-Respondents, No. 43066—252 S. W. (2d) 524.

Division One, November 10, 1952.

*Esco V. Kell* for appellant.

*Green & Green, Will H. D. Green* and *H. D. Green* for respondents.

VAN OSDOL, C.—This is an action to partition eighty acres of land in Howell County in which action, because of the issues raised by the pleadings, title to real estate is involved.

The described land had belonged to Thomas W. Green, who died intestate April 25, 1949, and his brother, James P. Green, who died intestate January 25, 1950. Plaintiffs, husband and wife, in the first count of their petition, alleged that plaintiff wife, Clara Alberta Green Lowtrip, was the daughter and is the sole heir of Thomas W. Green, and the niece and an heir of James P. Green. Plaintiffs, in the second count, sought recovery for services allegedly rendered by them to Thomas in his lifetime; but plaintiffs have dismissed as to the second count, so that the plaintiff wife is the only party plaintiff interested upon this appeal. The named defendants are the nieces and nephews of Thomas W. and James P. Green, deceased. By their answer defend-

ants denied that plaintiff was the daughter and the heir of Thomas (and that she was a niece and an heir of James); and on this issue joined, a trial was had without the services of a jury. The trial court found for defendants on the issue. However, the trial court recognized title in plaintiff to a 2/96th interest in the land (which she had acquired by deed from two defendants, Lyle and Norman Green), and ordered partition. Plaintiff, Clara Alberta Green Lowtrip, has appealed.

Admittedly plaintiff was born out of wedlock, but she introduced evidence tending to prove her legitimation as the child of Thomas W. Green under Section 468.070 RSMo 1949, V.A.M.S., which provides that if a man, "having by a woman a child or children, shall afterward intermarry with her, and shall recognize such child or children to be his, they shall thereby be legitimated."

This court has had occasion to review several cases in which the statute has been relied upon to establish claims of heirship. Breidenstein v. Bertram, 198 Mo. 328, 95 S.W. 828; Mooney v. Mooney, 244 Mo. 372, 148 S.W. 896; Drake v. Milton Hospital Ass'n., 266 Mo. 1, 178 S.W. 462; Busby v. Self, 284 Mo. 206, 223 S.W. 729. Apparently there are three supporting elements of fact essential to establish the ultimate issue of legitimation (and, in the instant case, the consequent or resultant rights of inheritance in plaintiff) under the provisions of the statute—actual paternity, intermarriage, and recognition. Breidenstein v. Bertram, supra. The plaintiff had the burden of proving the facts essential in supporting the ultimate issue. Mooney v. Mooney, supra. But in our case the shown fact of the intermarriage of Thomas W. Green with plaintiff's mother after the birth of plaintiff is in no way disputed. The contested issues are— was Thomas the (natural) father of plaintiff, and did he recognize her as his own daughter.

The statute (now Section 468.070, supra) was "inspired by an humane purpose. It was intended primarily for the benefit of those who were so unfortunate as to be born out of wedlock, and who, for that reason, were made outcasts by the common law, and looked upon as having no inheritable blood. As the statute is remedial, and was enacted mainly for the benefit of illegitimate children, it should be construed liberally so as to afford them the utmost protection." Concurring opinion of Thayer, J., in Adger v. Ackerman, 8 Cir., 115 Fed. 124; Breidenstein v. Bertram, supra; Drake v. Milton Hospital Ass'n., supra; Busby v. Self, supra. Consequently it has been said the statute in effect makes the fact that a man recognizes a child born out of wedlock, as his offspring, after he has married the mother, persuasive, if not conclusive, evidence that he is the father of the child. If it were not so, an illegitimate child would be in the same helpless and unfortunate position which such children occupied before the statute was enacted, since it would frequently be impossible for a child to prove

622

its paternity otherwise than by recognition. See again concurring opinion of Thayer, J., Adger v. Ackerman, supra; Breidenstein v. Bertram, supra. Thus we see that evidence tending to show the essential supporting fact of recognition is competent and relevant and persuasive in tending to demonstrate paternity.

In regard to the recognition supporting a finding of the parenthood of the alleged putative father—such recognition of the child as his own may be by combination of words, acts and conduct indicating the relation of parent and child. For example, the circumstances that the child has always borne the name of the alleged father and has been treated, maintained and educated as his child; and that the child has been uniformly received in society as his child, and so acknowledged by the other members of the family, are recognized as circumstances tending to prove the parent-child relation. Mooney v. Mooney, supra; Breidenstein v. Bertram, supra; Drake v. Milton Hospital Ass'n., supra. But while these circumstances, if shown, are persuasive and sufficient to support the finding of paternity, it would seem they are not always conclusive or decisive (Mooney v. Mooney, supra) because these shown circumstances or some of them may sometimes be also consistent with some relationship other than that of actual parent and child, and other evidence introduced tending to negative paternity may outweigh the weight of the evidence of recognition in tending to demonstrate paternity. Mooney v. Mooney, supra. See also Kidd v. St. Louis Union Trust Co., 335 Mo. 1029, 74 S.W. 2d 827 (involving the issue of adoption); Capps v. Adamson, 362 Mo. 539, 242 S.W. 2d 556 (involving the issue of adoption). In the Kidd and Capps cases some of the evidence tending to establish an adoption by contract [527] or estoppel was also in harmony with a stepfather-stepchild relationship. (Although we believe the Mooney case is an aid to us in reviewing the instant case wherein we shall endeavor to weigh the evidence, we do not adhere to the ruling in the Mooney case that there was no case to submit to the jury.)

In reviewing the Drake case this court expressed no opinion as to the weight of the evidence. In the Breidenstein case, a case greatly relied upon by plaintiff-appellant, the issues of fact as to legitimation and consequent rights as a pretermitted heir were submitted to a jury, and the question, upon review, was whether the evidence was sufficient to support the ultimate finding of the trier of the fact. This court in reviewing that case was not trying the cause de novo. In reviewing the instant case our task is different because the trial of the factual issues was before the trial court without a jury. We must examine and weigh the evidence and reach our own conclusions as to the facts since we are required to review the case upon both the law and the evidence as in actions of an equitable nature. Section 510.310 (4) RSMo 1949, V.A.M.S.

Ola Adkins, mother of plaintiff, testified that she met Thomas W. Green along in April, 1919, and kept company with him for almost three months. Plaintiff was born February 3, 1920. The witness stated that Thomas was the father of her child, plaintiff. When the child was six months old, in August 1920, the mother went to the Green home to care for Thomas W. Green's sister who was ill. Witness was married to Thomas in 1922. She had told her daughter that Thomas was the daughter's father. She had told "each of my kids from the time they could walk and talk." A child, Leon, sometimes referred to as "Bill," was born of the marriage. This son lost his life in World War II. The witness and Thomas were divorced in 1935.

Plaintiff, her mother and her husband, and disinterested witnesses testified that Thomas W. Green treated plaintiff as if she were his own daughter; he addressed her and spoke of her as his daughter; she addressed him as "Dad," and she referred to him as her father; her name was entered on the school rolls as "Alberta Green"; she was known in the family as Alberta Green; Thomas, in making application for old-age assistance in 1940, stated to the "case worker" that Alberta was his daughter. Plaintiff was given in marriage, and was married as Alberta Green. There was also evidence tending to show that an affection, apparently as that of parent and child, existed between Thomas and plaintiff. He gave her birthday presents; and he referred to her children as his grandchildren, and gave them Christmas gifts "and toys and things." It was said that Thomas gave Alberta eighty acres of land which he had bought with the proceeds of a National Life Insurance policy insuring the life of his son Leon who, as stated, lost his life in World War II. In the year 1935, as we have said, plaintiff's mother was divorced from Thomas; and plaintiff, married to Lowtrip, continued to reside a short distance from the home of Thomas. Plaintiff frequently called at the home of Thomas, and he visited her home. She did his laundry, and when he was ill she ministered to him. Considered aside from other evidence introduced, this evidence tending to show recognition (and the shown fact of the marriage of Thomas and Ola) would be persuasive if not conclusive evidence that Thomas was the father of plaintiff. Breidenstein v. Bertram, supra; Drake v. Milton Hospital Ass'n., supra. Moreover, in the instant case, Ola, mother of plaintiff, testified that Thomas was the father. However, the evidence as indicatory of a uniform recognition of parenthood was not all one way, and, as we shall presently see, there was evidence introduced tending to show Alberta was not the (natural) child of Thomas.

Defendant Fred L. Green, a banker with whom Thomas W. Green transacted his meager banking business, testified as a witness for defendants that Thomas referred to plaintiff as his stepdaughter—"he claimed she was his step-child but he thought a lot of her." A niece of Thomas and James testified that plaintiff was one [528] and a

half or two years old when the mother came into the community to care for the sick sister of Thomas and James. We observe that these two witnesses, respectively the nephew and niece of Thomas (and James), had an interest in the outcome of this litigation. One of plaintiff's witnesses testified that Thomas had said that after his "own Bill got killed in World War II that left the only child Alberta." We think this testimony is equivocal in tending to show Thomas recognized plaintiff as his *own* daughter. And one Tony Adkins, witness for defendants, a brother of Ola Adkins, testified that prior to and at the time plaintiff was born his sister Ola was "staying with" one Will Bell, and that Ola had stated to the witness, her brother, that Bell was the father of plaintiff. The witness conceded that he at one time had "an ill feeling" toward plaintiff and her husband. However, Ola admitted that she worked at the home of Bell "a year before" plaintiff was born.

On May 22, 1950, plaintiff and her husband entered into a contract with Fred L. Green, representing the "heirs of T. W. Green and J. P. Green," in which contract plaintiff and her husband agreed to pay all of the debts of decedents, Thomas and James, "provided they (second parties, plaintiff and her husband) can get a majority of the heirs to sign a Quit Claim Deed to second parties, but if a majority of the heirs refuse to sign quit claim deed conveying said real estate to them, then this contract is to be null and void and said Quit Claim Deed is to be destroyed and not binding on the heirs who have signed it nor upon the second parties." Pursuant to this contract the defendant Clara (L.) Morris, niece of Thomas and James, signed the quitclaim deed; but none of the other defendants joined in the conveyance. The contract did not recite, there was no contention, and no objection was made to the introduction of the contract into evidence on the ground that it was entered into as a compromise of any claim of plaintiff that she was entitled to inherit any interest in the land as a (legitimized) child.

[We believe the trial court correctly ruled that plaintiff (and her husband) acquired no interest in the described land by virtue of the deed. The defendant Clara Morris signed and acknowledged the instrument as her deed with the understanding it was pursuant to the contract providing, in effect, that the instrument was not to take effect as a conveyance of her interest unless a majority of the heirs joined as grantors.]

We also make reference to a letter introduced into evidence. The letter was apparently written by plaintiff's young daughter, at plaintiff's direction, to the defendant Clara Morris soliciting Clara's execution of the quitclaim deed provided for in the contract of May 22d. The letter contained the following passage, "I think I have earned the place as I have stayed there and took care of them. I have lived there all my life and dad treated me like I was his own daughter." This

letter, written at plaintiff's direction, and the contract signed by plaintiff and her husband are of probative significance, we believe, in tending to show that at the time of the execution of the contract plaintiff was not asserting she was the daughter (and heir) of Thomas W. Green, deceased. The letter and contract are inconsistent with plaintiff's claim.

The documentary evidence, the contract and letter, in our opinion amounted to an admission that no one had really asserted or claimed plaintiff was the (natural) child of Thomas; and that Thomas had never so acknowledged or recognized plaintiff. We think this evidence was of decisive weight, in view of the conflicting and equivocal state of the other evidence on the issues essential in establishing legitimation under Section 468.070, supra.

In this opinion we are supported by the finding of a trial court having better opportunity than have we to judge of the credibility of the witnesses.

The judgment should be affirmed.

It is so ordered. *Lozier* and *Coil, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.