T., Plaintiff-Appellant,

v.

T., Defendant-Respondent.

No. 33460.

St. Louis Court of Appeals.

Missouri.

Nov. 18, 1969.

Leon M. Feigenbaum, St. Louis, for appellant.

Vincent E. Hartigan, Jr., St. Louis, for respondent.

WEIER, Commissioner.

This is a divorce action. Judgment was for the defendant-wife on her cross-bill and she was awarded the care and custody of two minor children, a son and daughter. Judgment was also rendered against the plaintiff-husband for $15.00 per week for each child as support for the children. This appeal was taken by the plaintiff only from that part of the decree naming the male child as the son of the plaintiff and awarding the weekly sum for his support. Because of the issue of paternity and the age of the child, we will not use the names of the parties or the child in this opinion.

Plaintiff filed his petition for divorce grounded on general indignities and naming only the infant daughter, junior in age to the boy, as the child of the marriage. Defendant answered by admitting the marriage and separation, denying the grounds for divorce and affirmatively pleading the birth of the son. She also filed a cross-bill alleging general indignities as her causes for separation and divorce and again alleging the births of the boy and girl in wedlock of plaintiff and defendant. Plaintiff, both by reply to the answer and answer to the cross-bill, denied the paternity of the male child.

Plaintiff contends that the evidence does not support the trial court in its judgment establishing the legitimacy of this child and we will first address ourself to this issue. Mindful of our duty on review of this court-tried case, we will examine the case upon both the law and the evidence, weigh the evidence and render such judgment as the trial court ought to have given. The judgment of the trial court will not be set aside unless we find it clearly erroneous, and we will give due regard to the opportunity of the trial court to judge the witnesses' credibility. (Civil Rule 73.01(d), V.A.M.R.)

Evidence with respect to the paternity of the male child, aside from a birth certificate, was limited to the testimony of plaintiff and defendant. Plaintiff said that he first met his wife in June or July, 1958. He met her in a tavern, where she was employed to wait on customers. At that time, according to his version, she was "going steady" with someone else and he began having dates or social engagements with her in April or June, 1959. This culminated in marriage on June 2, 1961.

The child, whose paternity is in question was born August 10, 1959. Plaintiff testified that he supported the one child who was born of the marriage, namely the little girl. Living with him during the marriage was the young boy whom he introduced to others as his stepson. He took out no insurance on this child and when the child was treated at Alexian Brothers Hospital for drinking some lighter fluid, plaintiff paid the bill in cash. On the other hand, insurance was carried on the daughter.

Defendant related that there were two children born out of her "association" with the plaintiff. The boy was born August 10, 1959, and the girl, October 5, 1963. She readily admitted that the marriage ceremony was performed June 2, 1961. But she claimed that the first time she had sexual intercourse with plaintiff was in April of 1958. The marriage was performed by a magistrate in a state other than Missouri in a civil ceremony. She obtained two marriage certificates, both signed by the magistrate. On one the proper date of June 2, 1961, had been inserted by the magistrate; and on the other the space for the date had been left blank. She later inserted the date of July 20, 1957, which was prior to the date of birth of her son by over two years. Although she said that her husband was with her when she placed the date in the instrument, he denied any knowledge of the certificate or insertion.

The defendant said that plaintiff when referring to the boy always said "my son". As detailed instances where the boy was recognized as such, she told of an incident where the boy had injured his toe. The child was taken to the City Hospital and entered for emergency treatment under the name of plaintiff in plaintiff's presence. She said the child was baptized soon after birth under the surname of plaintiff with no objection by him. On a number of occasions, defendant testified, plaintiff introduced the child to friends and neighbors as his son.

On the other hand, defendant admitted going out with another man not her husband before the child was born; that she could never get plaintiff to sign an affidavit to correct the birth certificate of the boy, a procedure that had been suggested and recommended to her. A certified copy of this birth certificate, showing the child as having a surname of a former deceased husband of defendant and describing him as the legal father of the child, was presented to defendant in court and identified by her. Although she claimed she had given the first name of plaintiff to be used in the certificate to describe the father of the child, the certificate bore the first and surname of her previous husband. She said the child attended school under the name of plaintiff, but no school records were produced. Even though a number of people were named by defendant as witnesses who had heard plaintiff hold out and introduce the child as his own, none were brought into court by her. Moreover, her testimony as to what those witnesses would state as to the facts was equivocal. When asked whether certain persons whom she named would testify, (or whether she had reason to believe would testify, or who had told her they would testify) that plaintiff had admitted the boy was his natural child, she replied that plaintiff had never denied it. When questioned as to whether these persons had told her or would say so, she parried with the question: "Were they ever asked?"

Relying upon this evidence, the trial court determined that the male child of defendant was the legitimate son of the

plaintiff. We do not believe the probative evidence in this case warrants such a finding.

The statutory authority upon which defendant must rely to support the court order recognizing the legitimacy of the male child and thereby justifying the child support order, is found in Section 474.070, RSMo 1959, V.A.M.S. This statute reads:

> "Legitimation by marriage. If a man, having by a woman a child or children, afterward intermarries with her and recognizes the child or children to be his they are thereby legitimated."

■ To place the case within the framework of this law, our courts require the affirmative establishment of three essential facts. They are: 1) actual paternity of the child; 2) intermarriage of the putative father and the mother; and 3) recognition of the child by the father as his own. (Lowtrip v. Green, 363 Mo. 619, 252 S.W.2d 524, 526; Simpson v. Blackburn, Mo.App., 414 S.W.2d 795, 797.) Since there is no issue with respect to the marriage of the parties in the case before us, their controversy must be determined on the evidence that is relevant to actual paternity and recognition of the child by the father. Defendant, to support a favorable judgment on these issues, has the burden of proof. (Lowtrip v. Green, supra; Mooney v. Mooney, 244 Mo. 372, 148 S.W. 896, 900.)

■ Defendant's uncorroborated version of the facts as to paternity are not only controverted by the plaintiff, but they are also controverted by the birth certificate whose informational source was the defendant. It is not clear as to whether the former husband of defendant who was named in the birth certificate was alive at the time of the birth of the child, since the date of death did not appear in the record. It is also not clear whether defendant was still married to her former husband at the time of his death. The evidence does show that he died. But his status would make little difference in the outcome of this case since an adulterine bastard may be legitimated by subsequent marriage of the putative father with the natural mother if actual paternity and recognition are proven. (Nevins v. Gilliland, 290 Mo. 293, 234 S. W. 818, 820; Simpson v. Blackburn, supra, 414 S.W.2d 1.c. 797.) Defendant at least claimed that plaintiff was the father of the child but there was no corroboration by circumstance, admission by plaintiff or witness.

As to the requirement that plaintiff shall have recognized the child as his own, here again there is no corroboration of the testimony of the defendant that he had claimed him as his son. Although she claimed she knew many people to whom plaintiff had made such a declaration, defendant brought none into court. One whom she had named was plaintiff's brother but when he rose in the courtroom, she admitted that she did not know him. Hospital and school admissions and records purporting to show plaintiff's surname as the name of the child were mentioned, but not introduced. Specific instances of recognition were meager and as previously described, her answers were equivocal as to what plaintiff said in the presence of others. Considered altogether, those occasions when plaintiff, according to her testimony, may have described the boy as his son, may as well have been due to kindness on his part toward the innocent and helpless child and his love for his wife causing him to hide her shame and dishonor, as it did to establish his paternity (Mooney v. Mooney, supra, 148 S.W. 1.c. 901).

■ In view of the fact that she admittedly gave false information for the birth certificate and inserted a false date in the duplicate marriage certificate we question the credibility of defendant's testimony. The birth certificate was an instrument which our statute clothes with such superior factual acceptability and value as to admit it as prima facie evidence of the facts therein stated. (Sec. 193.170, RSMo 1959, V.A.M.S.) The marriage certificate was an instrument which could have a material

bearing on the facts of paternity. Fabrication of either document or the factual matter contained in either one has a direct bearing on our acceptance of her credibility as a witness. (98 C.J.S. Witnesses § 467, p. 338). It is certainly cause to suggest corroboration of her testimony as to the facts necessary to prove the issues of paternity and recognition.

 The trial court did not file any opinion setting forth its findings and conclusions of law (and was not required to so do). But during the course of the trial, the court indicated to counsel that a man who marries a woman is presumed to be the father of her children born out of wedlock before the marriage; and that the evidence to counter such presumption would have to do more than preponderate. In fact, it was suggested that the counter-proof would have to be very near to being beyond a reasonable doubt. This concept of the law may have had its genesis in part in a statement of the Missouri Supreme Court by way of dicta in Busby v. Self, 284 Mo. 206, 223 S.W. 729, 732. Characterized as a word of caution, the court said that the statute (Sec. 474.070) was based upon the same foundation of decency and justice that supported the presumption of legitimacy of children born in wedlock. It was then indicated that under this section there was a statutory presumption of legitimacy founded upon the acts of the parties. In other words before you arrive at the presumption there must be established by the evidence, acts of the parties which cause this presumption to come into being. And as required by the statute and the later decisions (Lowtrip, Simpson and Mooney, supra) these acts, or essential facts, are 1) actual paternity, 2) marriage and 3) recognition. And as to these proponent has the burden of proof. The statement in Busby cannot be held to be authority for the trial court's concept that the mere fact of marriage creates the presumption.

Because of our determination of this case on the evidence admitted, the errors alleged to have been committed by the trial court in the exclusion of certain evidence will not be considered since such determination would have no effect upon the result here reached.

We find that defendant has failed to sustain the burden of proving paternity and recognition of the child by plaintiff. That part of the judgment below finding the male child to be born of the marriage of plaintiff and defendant and ordering plaintiff to pay defendant for the support of this child is reversed.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, that part of the judgment below finding the male child to be born of the marriage of plaintiff and defendant and ordering plaintiff to pay defendant for the support of this child is reversed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.