James Marvin **MOYER**, Plaintiff–Appellant,

v.

Connie **WALKER**, et al, Defendants–Respondents.

No. 15739.

Missouri Court of Appeals, Southern District, Division One.

May 31, 1989.

shows that an original judgment was filed on April 1, 1988. Thereafter on April 15, 1988, a first amended judgment was filed. The amended judgment was essentially the same as the first judgment but substituted the word "plaintiff" for "defendant" in paragraphs 14 and 15 of the findings of fact. The notice of appeal was filed on May 13, 1988. A trial court may amend a judgment within thirty days after entry of judgment. Rule 75.01. While the trial court did not vacate the original judgment before filing the amended judgment, the effect of the amendment was entry of a new judgment. *Daniels v. Daniels*, 675 S.W.2d 29, 32 (Mo.App.1984). Consequently, the amended judgment was not final for purposes of appeal until May 15, 1988, and the notice of appeal was timely. Rule 81.-05.

Dennis E. McIntosh, Farmington, Marvin L. Dinger, Ironton, for plaintiff-appellant.

Maurice B. Graham, Don E. Greenwell III, Schnapp, Graham, Reid & Fulton, Fredericktown, for defendants-respondents.

HOLSTEIN, Chief Judge.

Plaintiff James Marvin Moyer filed a three-count suit. In "Count One" he sought to be declared the natural child of decedent Marvin D. Walker, Sr. In "Count Two" he contested a will of the decedent dated October 18, 1978, and admitted to probate April 21, 1986, claiming the will was improperly executed and attested and that it was the result of undue influence. "Count Three" sought a declaratory judgment that plaintiff is an omitted child of decedent entitled to inherit under § 474.240.1.[1] Following a trial to the court, judgment was entered declaring plaintiff to be the child of Marvin Walker, Sr., but denying other relief. Plaintiff appeals.

■ This court entered a *sua sponte* order directing the plaintiff to show cause why the appeal should not be dismissed based upon what appeared to be a late filing of the notice of appeal. The record

Plaintiff's first point asserts that the will of October 18, 1978, was not properly executed and attested because the witnesses did not subscribe their names in the presence of the decedent and each other, and the witnesses did not know they were attesting a will. Plaintiff's second point asserts that the will was the result of undue influence by Marvin Walker, Jr. (Sonny), one of the beneficiaries under the will. The third point claims that because plaintiff was "born" after the execution of the will, he is an omitted child under § 474.240 and is entitled to inherit a child's share under intestacy laws.

■ The standard of review of a court-tried will contest and declaratory judgment action requires that the judgment be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Mangan v. Mangan*, 554 S.W.2d 418, 421 (Mo.App.1977). The mere existence of evidence from which another conclusion might have been reached is not enough to demonstrate that the holding of the trial court is contrary to the weight of

---

**1.** Unless otherwise indicated, references to statutes are to RSMo 1986, and rule references are to Missouri Rules of Court (20th ed. 1989).

the evidence. Conflicts in evidence are for the trial court to resolve, and we take facts in accordance with the result reached. *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d 481, 483 (Mo. banc 1980).

Some facts are not now at issue. Among those facts are that plaintiff's date of birth was April 21, 1938, and he is the son of decedent Marvin Walker, Sr. and Mildred Ruth Moyer. Plaintiff's parents were never married. The decedent admitted to some persons that plaintiff was his son, but did not acknowledge the relationship to others. The decedent executed a document purporting to be his will on October 18, 1978. Of the residuary estate, the will left one-fifth to decedent's widow, one-fifth to decedent's son by a prior marriage, Sonny Walker, one-fifth to Sonny's wife, and one-fifth to each of Sonny's two children. The will made no mention of plaintiff. Marvin Walker, Sr. died a resident of Iron County in April of 1986 possessed of a substantial estate subject to probate.

In October of 1978, Marvin Walker, Sr. was recovering from surgery and radiation treatment. Marvin underwent surgery on a kidney in July and his last radiation treatment occurred October 5. There was no evidence that Marvin suffered any mental infirmity.

Sonny visited his father while in the hospital and on occasion transported his father to and from radiation treatments in St. Louis. The two discussed Marvin's desire to make a will, and Marvin indicated he did not desire to use his regular attorney. Sonny suggested attorney Earl Blackwell of Hillsboro, Missouri. Marvin and Blackwell had been acquainted for a number of years, and Marvin contacted Blackwell prior to visiting his office.

On a return trip from a treatment in St. Louis during late August or early September of 1978, Marvin and Sonny stopped at Blackwell's law office. While Sonny was initially with Marvin in the attorney's office, he left before there was any discussion of the details of the will. The attorney prepared the will in conformity with Marvin's instructions and mailed it to Marvin.

Marvin was back at work by October 11, 1978. On October 18, 1978, Marvin took the document drafted by Blackwell to the office of his trucking firm located in Pilot Knob, Missouri. Three employees of the trucking firm testified they were present in the office: two drivers, Melvin Tesson and Vernon Steve Tinsley, and an office worker, Lucy Romines. Both Tesson and Tinsley watched Marvin sign his name to the document, and, after reading the attestation clause, each signed as a witness to the will. Lucy Romines did not read the document, but signed it and affixed her notary seal to it. The attestation clause, read by both witnesses, stated as follows:

> We, the undersigned do hereby certify that MARVIN D. WALKER, SR. on the day and year above written signed the foregoing instrument in our presence and published and declared same to be his will, and we at his request and in his presence and in the presence of each other have hereunto set our hands as subscribing witnesses and we further certify that at such time he was of sound and disposing mind and memory.

Thereafter, the will was delivered to Sonny who kept it until after the elder Walker's death. Unknown to Sonny, the decedent never mentioned the will to his wife.

Plaintiff's first point argues that the proponents of the will failed to prove due execution by clear and convincing evidence of substantial compliance with § 474.320. The statute provides:

> Every will shall be in writing, signed by the testator, or by some person, by his direction, in his presence; and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator.

Plaintiff's argument highlights evidence offered in an effort to impeach the credibility of Tesson and Tinsley. Those witnesses disagreed as to the exact time of the execution of the will. The trucker's log books of Tesson and Tinsley showed they were en route to locations outside the state at least part of the day on which the will was executed and attested in Missouri. Tinsley could not remember if "Marvin came out

and in exact words and said that, 'This is my will.'" Tinsley and Tesson were unaware of any of Marvin's health problems, and they believed him to be in good health when the will was signed. Neither witness recalled reading the will or discussing its contents with Marvin. The attestation clause was not read aloud. Tesson did not know whether Tinsley read the clause.

All the facts recited by plaintiff may weigh upon the credibility of Tinsley and Tesson as witnesses. However, neither witness equivocated in his testimony that the facts contained in the attestation clause were true. The trial court was entitled to believe all, part, or none of their testimony. *Arnott v. Kruse*, 730 S.W.2d 597, 598 (Mo. App.1987). Because of the time lapse between the date the will was executed and the date the witnesses testified, discrepancies as to their recall of details are to be expected. The trial court was entitled to, and apparently did, believe the substantive facts asserted in the attestation clause.

 Plaintiff's argument suggests that a testator must verbally express the content of his will to the witnesses, and that witnesses must know that the testator is in good health when the will is executed. The request by a testator to witnesses to attest his will, and the publication of the will, need not be expressed in words, but may be by acts, signs, conduct or inferred from the circumstances. *Hodges v. Hodges*, 692 S.W.2d 361, 369 (Mo.App.1985). The testator's good health is not a prerequisite to execution of a will, although it may be considered with other facts in determining his testamentary capacity. *Disbrow v. Boehmer*, 711 S.W.2d 917, 924 (Mo. App.1986). The standard for determining testamentary capacity is whether at the time the will was signed the testator was of sound mind, understood the ordinary affairs of life, knew the nature and extent of his property, the persons who were the natural objects of his bounty, and that he appreciates his natural obligations to those persons. *Lewis v. McCullough*, 413 S.W.2d 499, 505 (Mo.1967); *Farnsworth v. Farnsworth*, 728 S.W.2d 223, 227 (Mo.App. 1986). All the testimony, including the physicians who treated the decedent, indicated that despite the earlier surgery and radiation treatments, Marvin was mentally sound in October of 1978. Nothing suggests that he was not fully cognizant regarding his property, his family, and the claim that plaintiff was his son. The first point is without merit.

 Plaintiff's second point asserts that the trial court's finding that the will was valid and was not the result of undue influence is against the weight of the evidence. The power to set aside a judgment on the ground that it is "against the weight of the evidence" is exercised with caution and only with the firm belief that the decree or judgment is wrong. *Murphy v. Carron, supra*. In a will contest, the burden of proving a beneficiary exercised undue influence over the testator rests on the contestant. *Rhoades v. Chambers*, 759 S.W.2d 398, 402 (Mo.App.1988).

 Plaintiff correctly asserts that a presumption of undue influence arises when evidence shows there was a confidential or fiduciary relationship existing between the testator and the beneficiary, the beneficiary has been given a substantial bequest by the will, and the beneficiary was active in procuring the execution of the will. If such facts are shown, the issue of undue influence must be submitted to the fact-finder. *Rhoades v. Chambers, supra*. The trial court found, and the record supports the finding, that plaintiff failed to prove Sonny held a confidential or fiduciary relationship with regard to the testator, and that Sonny was not active in procuring the testator's execution of the will. While a confidential relationship cannot be exactly defined, it usually involves a situation in which one party relies upon another in regard to the handling of property or business affairs. *Estate of Brown v. Fulp*, 718 S.W.2d 588, 595–96 (Mo.App.1986). Recommending an attorney to a family member and transporting the family member to the attorney's office does not necessarily rise to the level of a confidential or fiduciary relationship. In addition, the fact-finder was justified in finding that Sonny was completely uninvolved in procuring the exe-

cution of the will. The will was executed at the decedent's business at a time when Sonny was not present. So far as the record shows, Sonny made no suggestions regarding the content of the will and did not see the will before its execution. Furthermore, there was absolutely no evidence that Marvin was in a weakened mental condition which may have made him subject to Sonny's influence, as suggested in appellant's brief. The second point is denied.

Plaintiff's final point argues that since he was only adjudicated a child of decedent in this action, he was "born" to the testator upon entry of the decree. Therefore, he argues, he qualifies as an omitted child under § 474.240.1. That statute provides:

> If a testator fails to provide in his will for any of his children born or adopted after the execution of his will, the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate. . . .

As we understand plaintiff's argument, he begins by suggesting that an illegitimate child becomes a child only upon being "recognized" as such. § 474.240.3. He then argues that "recognized" means a judicial decree of paternity. Next he argues that once a father and child relationship is decreed, the child is entitled to all resultant rights of inheritance, citing *Lowtrip v. Green*, 363 Mo. 619, 252 S.W.2d 524, 526 (1952). Finally, he submits that because he could not enjoy the benefits of being decedent's child until declared such, a construction of the statute holding he was born prior to the decree amounts to a denial of equal protection and due process of the law under the Fourteenth Amendment of the United States Constitution, citing *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).

The argument is flawed in several respects. Under § 474.240.1 it is clear that a child omitted from his parent's will is not entitled to inherit unless he is born or adopted after the execution of the will. The statute does not require that the child be "recognized" as such by the parent or

that the child be legitimate. It applies equally to all children of the testator. While plaintiff may be entitled to such rights of inheritance that a legitimate child would have, certainly he would not have a greater right to inherit than any other child omitted from his parent's will.

Second, plaintiff cites no authority for his conclusion that illegitimate children of males are "born" only when they are recognized as their father's child in a judicial decree. A word used in a statute is normally given its plain and ordinary meaning. *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 401 (Mo. banc 1986). Being "born" means the act of being delivered from the mother's body. Black's Law Dictionary 167 (5th ed. 1979). Plaintiff was born many years prior to the execution of the will from which he was omitted. Missouri, by adoption of its current statute, abandoned the rule that an omitted child was entitled to inherit regardless of the date the will was executed. *See* § 468.290, RSMo 1949 (repealed 1955). Plaintiff's third point is without merit.

The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.