ESTATE OF Oliver N. BREWER, Deceased;

James T. Holcomb, Personal Representative, Defendant,

Amberetta Dawn Brewer, Appellant,

v.

Danny Brewer and Trudy Brewer, Respondents.

No. WD 64671.

Missouri Court of Appeals, Western District.

Aug. 2, 2005.

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

Dana James Macoubrie, Chillicothe, for Appellant.

Jack Peace, Trenton, for Respondents.

James T. Holcomb, Trenton, for Defendant.

RONALD R. HOLLIGER, Judge.

Amberetta Armstrong, the illegitimate daughter of the decedent, appeals the judgment of the Probate Division of the Circuit Court of Grundy County, Missouri, finding that she was not entitled to an intestate share, as an omitted child, of the estate of Oliver N. Brewer. While Oliver left a will disposing of his estate, the will was executed prior to Amberetta's birth, and she claims a share of the estate as an omitted child pursuant to Section 474.240, RSMo. The trial court found that Amberetta was not entitled to recover under that statute because she was an illegitimate child who had not been recognized by Oliver as his child. We conclude that the trial court's judgment erroneously declares and applies the law and must be reversed and remanded for further proceedings.

## Factual and Procedural Background

There is little dispute about the facts. Amberetta Armstrong (a.k.a. Amberetta Brewer)[1] was born on November 30, 1980. No father was listed on her birth certificate, and she was raised by her mother, Sherry Armstrong. Paternity proceedings were initiated in the Circuit Court of Cole County, resulting in a judgment on October 29, 1982, finding Oliver N. Brewer to be Amberetta's father and ordering him to pay child support to Armstrong in the amount of $100 per month. Oliver paid the ordered child support until the child's emancipation, but apparently provided her no other support. He did not apparently attempt to develop any sort of parental relationship with Amberetta and had, at best, minimal contact with his daughter.

Oliver died on April 21, 2003. He left behind a last will and testament dated June 21, 1979. That document divides Oliver's estate between his other two children, Danny and Trudy Brewer. As that document was executed prior to Amberetta's conception and birth, it contained no mention of her or any intended disposition of the estate to her.

The will was admitted in the Probate Division of the Circuit Court of Grundy

---

1. There is considerable confusion in the record with regard to Amberetta's surname. In the 1982 paternity action and resulting judgment, her name is stated as "Ambretha [sic] D. Armstrong." There was evidence that Amberetta's birth certificate, social security card, paychecks, and savings account bear the surname Armstrong. In the present proceeding, she styles herself "Amberetta Dawn Brewer," however. She also claims to have used the Brewer surname during her schooling, while respondents contend that her first use of the Brewer surname is the present litigation. Nothing in the record indicates whether Amberetta's surname was legally changed from Armstrong to Brewer. Despite confusion on the issue of Amberetta's surname, it is ultimately not a factor in the disposition of the question presented on appeal. For purpose of this opinion, we will refer to her solely by the name "Amberetta" for clarity.

County on April 28, 2003. Amberetta subsequently filed a petition seeking a share of the estate as an omitted child. The court ultimately denied her petition. This appeal follows.

## Discussion

In her sole point on appeal, Amberetta contends that the trial court erred in denying her a share of Oliver's estate as an omitted child upon its finding that Oliver had not "recognized" her as his child. Amberetta argues that the evidence established that Oliver clearly recognized and acknowledged her as his daughter on a number of occasions during his lifetime. Respondents contend that the trial court correctly concluded pursuant to Section 474.240, RSMo 2000, that Oliver had not recognized Amberetta as his child and, therefore, she is not entitled to a share of Oliver's estate.

As a court-tried case, our review is conducted under the standard of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *In re Estate of Weddle*, 84 S.W.3d 144, 146 (Mo.App.2002). We will, therefore, affirm unless the trial court's judgment is unsupported by substantial evidence, is against the weight of the evidence, or it erroneously applies or declares the law. *Id.*

The principal if not sole issue herein is the meaning of the term "recognize" in Section 474.240, RSMo 2000, which addresses inheritance rights for children born after execution of a testator's will. As a general proposition, if a child of the testator was born or adopted after the date the testator executed the will being probated, that child is entitled to whatever intestate share of the testator's estate he or she would have been entitled to had the testator died without a will. Section 474.240.1, RSMo. This general rule is sub-

ject to three exceptions, none of which is relevant for purposes of this matter.

Subsection 3 of the statute addresses claims made by an illegitimate child born after execution of a male testator's will. It provides that the illegitimate child is entitled to the above-mentioned intestate share of the decedent's estate if the decedent recognized the child as his, either in the will or while the testator was alive. The subsection provides: "An illegitimate child is not a child of a male testator, for the purposes of this section, unless the testator, during his lifetime or in the will, *recognized* that the child was his." Section 474.240.3, RSMo (Emphasis added).

There is no question, here, that Amberetta would have been entitled to a share of Oliver's estate had he died intestate. For purposes of intestate succession, a child born out of wedlock may inherit from his or her father, provided that a paternity judgment is obtained prior to the father's death or is established by clear and convincing evidence after the father's death. Section 474.060.2, RSMo. As Oliver did not die intestate, however, Amberetta was required to prove that Oliver had recognized her as his child, either in the will or while he was still alive. It is this question upon which resolution of the present dispute hinges.

The recognition requirement of Section 474.240.3, RSMo, was not part of the Uniform Probate Code, but was added by the Missouri legislature when adopting the statute. John A. Borron, Jr., 5 MISSOURI PRACTICE: PROBATE LAW AND PRACTICE Section 46 at 100 (3rd ed.1999). The drafting committee notes indicate that this addition to the statute was intended to address the situation in which an illegitimate child, unknown to the decedent, made a claim on his estate. Frances M. Hanna, 4 MISSOURI PRACTICE: PROBATE CODE MANUAL Section

474.240 at 584 (2nd ed.2000).[2]

The term "recognized" in Section 474.240 is not specifically defined by the legislature. It is a concept, however, frequently used in similar context in Missouri case law. In those contexts, recognition of a child may occur through "combination of words, acts and conduct indicating the relation of parent and child." *Lowtrip v. Green,* 363 Mo. 619, 252 S.W.2d 524, 526 (1952). In identifying what acts or conduct might be probative on this issue, courts have observed:

> [C]ircumstances that the child has always borne the name of the alleged father and has been treated, maintained and educated as his child, and that the child has been uniformly received in society as his child, and so acknowledged by the other members of the family, are recognized as circumstances tending to prove the parental relation.

*Id.* (citing *Mooney v. Mooney,* 244 Mo. 372, 148 S.W. 896 (1912); *Breidenstein v. Bertram,* 198 Mo. 328, 95 S.W. 828 (1906); and *Drake v. Milton Hosp. Ass'n,* 266 Mo. 1, 178 S.W. 462 (1915)). While recognition of the parent-child relation might be inferred from such circumstances, we note that the alleged father's statements with regard to the alleged child may also be highly probative on the issue, and should be considered alongside evidence of acts and conduct. *See, e.g., Brown v. Conway,* 598 S.W.2d 549, 553 (Mo.App.1980) (statements by decedent to family members that alleged child was decedent's son found persuasive by court).

The Brewers argue and the trial court agreed based on the above legal statements that "recognized" refers to the qualitative nature of a parental child relationship. Conversely, Amberetta contends that "recognized" refers to the realization of the fact of a parental child relationship (whether there is a biological relationship). Here, there was substantial evidence that Oliver did not treat Amberetta as his child through his acts and conduct. He did not attempt to develop a father-daughter relationship with her. She was not included in family events and was treated, essentially, as a stranger by Oliver and his other children. Oliver did not mention her to others of his own volition, and would only speak of her when he was asked about her, often becoming angry and upset in the process. A number of Oliver's close friends knew nothing about Amberetta until after Oliver's death. The Brewer's argue that recognition means only that a familiar relationship existed in the sense that there is some quality to the relationship. In other words, they argue that the emphasis is not whether the decedent realized that the illegitimate child was his but whether the illegitimate child was treated in the same way that one might expect natural children to be treated. With this definition, the Brewers argue the correctness of the trial court's finding that Oliver did not recognize Amberetta as his child.

Here, however, there was more than just Oliver's acts or conduct. The trial court was also required to consider statements made by Oliver with regard to Amberetta in determining whether he recognized her as his daughter. The trial court, in its findings, mentioned a number of instances where Oliver verbally acknowledged that he was Amberetta's father. On one occasion, Oliver told his son, Danny, that he was Amberetta's father. He made a similar statement on another occasion to his daughter, Trudy, which was witnessed by one of Trudy's close friends. Once, someone questioned Oliver after hearing

**2.** Whether this statutory provision was truly necessary in light of the requirements of Section 474.060, RSMo, discussed above, is beyond the scope of the present inquiry.

Amberetta (then a young girl) calling Oliver "Dad," to which he described the situation as "an $18,000 mistake," apparently in reference to the child support he had been paying.

Each of these statements is set forth or described in the trial court's judgment and were apparently found to be credible by the court. These fact findings cannot be reconciled with the trial court's conclusion that Oliver did not recognize Amberetta as his child before his death unless we accept respondent's argument about the meaning of the term "recognized."

Both parties rely upon *Lowtrip.* There an allegedly legitimated daughter of a decedent filed an action for partition. *Lowtrip,* 252 S.W.2d at 525–26. The decedent and her mother had married subsequent to her birth and she claimed legitimization under the provisions of Section 468.070, RSMo.1949 (now 474.060). *Id.* at 526.

While Oliver may have shunned Amberetta and disavowed any sort of parental bond or relationship with her,[3] the evidence, as found by the court, clearly indicates that he acknowledged the fact that he was her father. The Brewers point to no authority for their meaning of the term "recognized." Indeed, a reading of each of the cases they cite clearly indicates to the contrary; that the essential issue in each case was whether a biological parent child relationship existed.

The judgment of the trial court is, therefore, reversed, and the matter is remanded to the Probate Division of the Circuit Court of Grundy County to enter judgment in favor of Amberetta and conduct further probate proceedings consistent with this opinion.

JAMES M. SMART, JR., Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.

---

3. Indeed, the trial court's findings include recitations of a number of times where Oliver stated that Amberetta was "not a part of his life." Other evidence in the record indicates that Oliver spoke with an attorney about changing his will to explicitly exclude her from inheriting from his estate. This suggests that Oliver acknowledged that he was Amberetta's father and the possibility that she might be able to inherit from his estate. Obviously, Oliver did not follow through with those intentions by executing a new will.