JAMES M. BOWER et al., Appellants, v. MARTHA GRAHAM et al.

Division One, December 2, 1920.

1. **LEGITIMATE CHILDREN: Born in Lawful Wedlock: Conception.** A child born five months after its mother's marriage with its father is born in lawful wedlock, and is entitled to inherit its father's lands; and the presumption raised by its birth in lawful wedlock is not destroyed by the fact that the mother was the wife of another when it was conceived.

2. ———: **Adulterine Issue: Statute.** An adulterine child born in lawful wedlock is made legitimate by the statute (Sec. 341, R. S. 1909). The obvious intent of the statute was to preserve to the

letter the advantage of the legal presumption arising from the birth of a child at a time when its parents were living in lawful wedlock.

3. ———: ———: Recognition: Presumption. The recognition by the husband gives controlling force to the presumption that a child born to the wife in the house of her husband is his child; and when his collateral kindred claim property under him as his heirs, they are bound by the situation which he created, and are bound by his acknowledgment of the paternity of the child; and if he acknowledged and recognized the child as his own at all times after its birth, no presumption of illegitimacy arises from the fact that the child was born five months after he and its mother were married and that at the time of its conception she was the lawful wife of another.

4. ———: Divorce by Agreement: Remarriage and Birth of Child. Defendant Martha was the wife of Jackson, and in August left him, and in September he instituted suit for divorce from her, but abandoned the suit, sought and obtained reconciliation with her, and she returned to him in October. He took to drink, and on March 1st she left him again, and in May he sued her for a divorce, and at the same time Bower sued his wife (Orena) for a divorce, and decrees being entered for plaintiffs in both cases in May, Bower and Martha were married on May 28th and a child was born to her on October 24th. Prior to March 1st Bower visited Martha as often as twice a week and when there would share her bed. The suit by Bower against Orena was a friendly one, and the facts show that both proceedings were the result of agreements between the four. *Held*, that the law would imply no conjugal relation between Jackson and Martha after March 1st by reason of the divorce suit pending between them, and the statement in his petition that before it was filed her conduct had been such as to make it impossible for him to live with her would imply a previous cessation of such relations, and these and the other facts fail to overcome the presumption of legitimacy arising from the fact that the child was born in lawful wedlock.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Hiett & Scott* for appellants.

(1)  A child begotten before the commencement of a suit for divorce is presumed to be the legitimate child

of the then husband.   To rebut this presumption the most satisfactory and convincing proof that the husband is not the father of the child must be given.   Cross v. Cross, 23 Am. Dec. 778; R. S. 1909, secs. 342, 2370; Nelson v. Jones, 245 Mo. 579; Egbert v. Greenwalt, 38 Am. Rep. 263; 3 Ency. of Law, par. 2, p. 72; 3 R. C. L., par. 6, p. 726; Kennedy v. State, 173 S. W. 842; Johnson v. Johnson, 30 Mo. 72; Gates v. Seibert, 157 Mo. 272; Martin v. Martin, 250 Mo. 545;   Powell v. State, 95 N. E. 660; 7 Corpus Juris, par. 7, p. 942; Drennan v. Douglas, 40 Am. Rep. 597.   (2)   The presumption of law is that a child is presumed to be legitimate child of its mother's husband at the time it was begotten and this presumption being raised its mother would be an incompetent witness to prove that such child was not begotten by such husband.   In re Miles Estate, 70 Pac. 91; Mink v. State, 19 N. W. 445, 50 Am. Rep. 386; 3 R. C. L. par. 12, p. 732; Kennedy v. State, 173 S. W. 842; Liles v. State, 174 S. W. 1196; Ewell v. Ewell, 79 S. E. 509; People v. Case, 137 N. W. 55; Wallace v. Wallace, 114 N. W. 258; Foote v. State, 144 S. W. 275; Cross v. Cross, 23 Am. Dec. 778; Mink v. State, 19 N. W. 445; Rhyne v. Hoffman, 59 N. C. 335; Powell v. State, 95 N. E. 660.   Any evidence of the wife's adultery at or about the time of conception is not enough to rebut the presumption.   Cross v. Cross, 23 Am. Dec. 778; 7 Corpus Juris, par. 15, p. 946; Drennan v. Douglas, 40 Am. Rep. 595; Powell v. State, 95 N. E. 660; 7 Corpus Juris, p. 946, note 86, and p. 945, note 75;     Greenleaf on Evidence (15 Ed.), sec. 28, p. 44; Egbert v. Greenwalt, 38 Am. Rep. 260.   (3)   Whilst the birth of children can be ascribed to a legitimate source, the law will not suppose criminality.   3 R. C. L. par. 6, p. 726; Egbert v. Greenwalt, 38 Am. Rep. 260;   Nelson v. Jones, 245 Mo. 579; Maier v. Brock, 222 Mo. 74;   Johnson v. Railroad, 203 Mo. 381.   (4)   The defendant relies upon the presumption that a child born in lawful wedlock is the legitimate child of its mother's husband at the time of its birth.   The

plaintiff relies upon the presumption that if a child is begotten in lawful wedlock it is the legitimate child of its mother's husband at the time it was begotten. Both of these presumptions are not conclusive but both are rebuttable. Drake v. Hospital, 266 Mo. 10; 7 Corpus Juris, par. 6, p. 942, note 36; 3 Ency. Law, p. 876. (5) A presumption may be rebutted by a contrary and stronger presumption. Wadingham v. Wadingham, 21 Mo. App. 609; Tarvall v. Railroad, 113 Mo. 570. (6) Evidence of the resemblance of a child to its alleged father is not admissible. 7 Corpus Juris, par. 125, p. 993; 3 Ency. Law (2 Ed.), par. 9, p. 885; 2 Ency. Evidence, par. 8, p. 253; Hannawalt v. State, 54 Am. Rep. 558; McCallaman v. State, 48 S. E. 609.

*Lamar & Lamar* for respondents.

(1) The mere fact that during the time when a child was conceived the mother was the wife of a man, from whom she obtained a divorce a short time before the child was born is not sufficient to overcome the presumption that the child is the legitimate off-spring of the man whom she married immediately after the divorce and who was her husband at the time of the birth of the child, the child being born a few months after the marriage with the second husband. 3 R. C. L. p. 730, sec. 10; Zachman v. Zachman, 201 Ill. 380. (2) This is an action at law. The court sitting as a jury passed upon the issues and found against the appellants as to the paternity of the child. This finding is entitled to all the presumptions which attach to a verdict of a jury and this court will not disturb such finding, if it is supported by any substantial evidence. In re Langford's Estate, 172 Mo. 18; Roloson v. Riggs, 274 Mo. 528; Walker v. Roberts, 204 S. W. 18; Boas v. Branch, 208 S. W. 86; Bingham v. Edwards, 210 S. W. 885; Hayes v. McLaughlin, 217 S. W. 264. (3) Appellants complain of the admission of the testimony of Martha Bower to the effect that her then husband, Will Jackson, had no

marital relations with her after Christmas 1908.   There
are several answers to this contention.   (a)   This evi-
dence was not objected to.   The evidence that plaintiff
objected to was her evidence as to her adulterous re-
lations with Bower, which is an entirely different ques-
tion.   She is competent to testify to such relations, but
if not, such adulterous relations are amply proven by
her sister.   Later on in her evidence, when she was asked
concerning the access and non-access of her husband
William D. Jackson, after Christmas, 1908, no objection
was made by plaintiff to this evidence.   That plaintiff
cannot convict the trial court of error in admitting evi-
dence to which he did not object needs no citation of
authorities.   (b) Even if plaintiff had objected to the
testimony of the mother of the child as to the non-access
of her then husband, the weight of authority is to the
effect that such evidence is admissable.   3 Wigmore on
Evidence, secs. 2063, 2064, and notes; Buriel v. Nester,
203 Mo. 429; In re Gird's Estate, 108 Pac. (Cal.) 502;
Tout v. Woodin, 137 N. W. 1003; Evans v. State, 75 N.
E. (Ind.) 651; In re McNamara's Estate, 183 Pac. (Cal.)
554.   (c) Whether Mary Bower be adjudged the child of
Timothy Bower, or of William Jackson, she is under the
law in either event a legitimate child and the testimony
of her mother as to her parentage cannot render her
illegitimate.   Schouler on Domestic Relations (3 Ed.),
p. 305, sec. 225.   (4) It is a settled rule of law in this
and other states that where a case is tried by the court
sitting as a jury, and no declarations of law asked or
given and both competent and incompetent testimony has
been admitted, if there is in the record substantial com-
petent evidence to support the finding of the trial court
an appellate court will indulge the presumption that the
trial court based its finding on the evidence which was
competent and disregarded the incompetent.   It will not
reverse because such incompetent evidence was admitted.
Lewis v. Frankle, 158 Mo. App. 262; Bank v. Wodz, 197
Mo. App. 696; Diggs v. Henson, 181 Mo. App. 34; Lau-

mier v. Gehner, 110 Mo. 126; McCullough v. Ins. Co., 113 Mo. 616; King v. Slater, 133 S. W. 173; Champion v. McCarthy, 81 N. E. 808; Patterson v. People, 130 Pac. 628; Ford v. Lou-Kum-Shu, 146 Pac. (Cal.) 199.    (5) On the question of paternity, the evidence of resemblance of the child and the putative parent is admissible.    7 Corpus Juris, p. 944, sec. 14.    (6) If a child is born in wedlock it is legitimate and this is true, although there be antenuptial conception.    Zachmann v. Zachmann, 66 N. E. 256; State v. Romaine, 11 N. W. 721; Wallace v. Wallace, 114 N. W. 527; McRae v. State, 61 So. 977.    (7) If a child is born in lawful wedlock it is a legitimate child. 7 C. J. p. 938, sec. 1; p. 940, sec. 6; 1 Words and Phrases (2 Ed.), p. 409; 2 Kent's Commentaries, p. 208; 1 Blackstone's Commentaries, p. 466; Schouler's Domestic Relations (3 Ed.), sec. 225; Gates v. Seibert, 157 Mo. 272; Martin v. Martin, 259 Mo. 545; State v. Romaine, 11 N. W. 721.    (8) Under the law if a man marries the mother of an illegitimate child and thereafter recognizes the child as his own it becomes his legitimate child.    Drake v. Hospital Assn., 266 Mo. 7; Ives v. McNicoll, 53 N. E. (Ohio) 60; Briedenstein v. Bertram, 198 Mo. 347; Nelson v. Jones, 245 Mo. 595; Miller v. Pennington, 75 N. E. 919.    (9) The question of paternity is a question of fact, and if there is any evidence to justify, it should be submitted to a jury, or the court, sitting as a jury.    3 Wigmore on Evidence, secs. 2063, 2064; 2 Kent's Commentaries (14 Ed.), pp. 211, 212, and note a; Schouler's Domestic Relations (3 Ed.), sec. 225, p. 307; 1 Greenleaf on Evidence (14 Ed.), p. 44, sec. 28; State v. Shaw, 94 Atl. 436; In re Walker's Estate, 181 Pac. (Cal.) 792; 7 C. J. p. 945, sec. 15.    (a) Appellants take the position that there is a conclusive presumption of law that a child concived in wedlock is the off-spring of the then husband and wife, unless the non-access of the then husband be conclusively shown.    It will be found by an examination of the authorities that this rule, if it ever was the rule, has been modified, and while there is a presumption that

the then husband is the father it is a rebuttal presumption, and may be rebutted by any competent evidence, and facts and circumstances may be given in evidence to rebut such presumption. Walker Case, 181 Pac. 796.

BROWN, C.—Tnis suit was begun in the Circuit Court of Texas County on February 14, 1916. Its general object is to try the title to about one hundred and sixteen acres of land in said county, fully described in the petition, and of which one Timothy S. Bower died seized in 1910. At the time of his death he resided in Wichita County, Texas, where his personal estate was administered. He left a widow, Martha, who has since intermarried with one Graham, and is sued by that name. She has ever since been living on the land with her child, the defendant Mary Bower. The identity of the child's father is the sole subject of controversy in this case. If she is, in contemplation of law, for the purpose of inheritance, the daughter of Bower, she and her mother take the land. If not, his collateral heirs take it subject to her mother's interest as widow.

Bower's father and mother predeceased him. He left no other child, but, at the time of his death, had four brothers and four sisters. Two of these brothers, James M. Bower and William H. Bower, are the plaintiffs. Of the other six, one has refuse to join in the suit, one or two have died since the death of Timothy, and others cannot be located. They and their representatives in interest are all joined as defendants under the proper allegations.

The substantive facts upon which the issue stands, and which will be developed in detail as we proceed, are as follows:

One William D. Jackson and the defendant Martha Graham were married in October, 1896. Five children were born to them, four of whom survived, the youngest being about two years old at the beginning of 1909. The family lived at Hazleton in Texas County, where Mr.

Jackson had a store. They lived together as husband and wife until about the middle of August, 1908, when trouble arose between them, and Mrs. Jackson left him, taking her four children with her to the house of her sister in St. Francois County, where she remained until October of the same year. In September, after her departure from Texas County, Mr. Jackson instituted a suit for divorce against her in that county, alleging as grounds therefor desertion and indignities, but did not charge unchastity, nor in any way mention his children. This suit was not followed. On the contrary, he went to his wife in St. Francois County in October, was apparently reconciled with her, and brought her and her sister, with the children, back to his home in Texas County. Bower also was in St. Francois County at the same time, and both the sisters testified that when they went back home with Jackson there was an understanding with Bower that on their return divorces would be procured and that they could then be married to each other.

When Martha and her sister Caroline and the four little children arrived at the Jackson home in Hazleton, the family of seven, including Aunt Caroline, seems to have resumed a normal condition and might, perhaps, have continued to function like other well ordered families but for the fact that there was a still just over the Phelps County line, the lure of which had a strong attraction for the husband and father. Whether the return of his wife and children created a need for the cheerful product does not appear from the record, but it does show that he took to drink, and when Christmas time came he was in bed with "jim-jams," and, according to the testimony of his sister-in-law and a neighbor, fell into the drink habit, so that he was under its influence the most of the time. The newly reconciled wife refused to maintain conjugal relations with him, and did not, in fact, share his bed from that time until she left and returned to St. Francois County on or about March 1, 1909. During that time, according to the testi-

mony of both Martha and her sister, who spoke from her own observation, Mr. Bower visited her as often as twice a week, and when he was there would share her bed.

The final separation of the Jacksons took place about March 1, 1909. About that time Mr. Jackson filed in the Texas County Circuit Court his petition for divorce against Martha, which contained no charge of adultery, nor prayer for any relief on account of the children. At or about the same time Bower filed his petition for divorce against his wife, Orena. Both were heard at the May term, and decrees were granted as asked. The Bower decree was entered upon an agreement by which a farm with stock and other personal property, and one thousand dollars in secured notes, were adjudged to the wife.

Bower and Martha were married May 28, 1909. The child whose paternity is in dispute was born October 24, 1909. He was proud of the child. There is evidence tending to show that, although a girl, it resembled him.

I. It is well enough to have in mind at the very beginning that we are called upon to adjudicate the rights of the child Mary Bower and not to give virtuous expression to our own disapproval of the iniquities of the parents. The time is come which was, nearly three thousand years ago, predicted by a great expounder of the moral law, when "every one shall die for his own iniquity: every man that eateth the sour grape, his teeth shall be set on edge." [Jeremiah, ch. 31, v. 30.]

Conception Before Marriage.

It is admitted in this record that notwithstanding all the disgusting details in evidence, the child was born in lawful wedlock, five months after the marriage of her mother with Bower.

In Gates v. Seibert. 157 Mo. 254, 272, this court said: "A legitimate child under our law is one born in lawful wedlock or of a widow within ten months after the death of her husband, or born before the marriage of its

parents who afterward marry, and receives the recognition of its father; and one such child is just as legitimate before the law as the other.'' We approved this definition in Breidenstein v. Bertram, 198 Mo. 328, and in Martin v. Martin, 250 Mo. 539, l. c. 545. In this case there is no question that this child was born in lawful wedlock, and therefore comes within the first definition, and is entitled to the presumption resulting from its birth, unless it is destroyed by the fact that the mother had been the wife of another when it was conceived, which the appellants say overcomes completely the presumption raised by its birth in wedlock. This is the propostion before us. It was before the Supreme Court of Illinois in Zachmann v. Zachmann, 201 Ill. 380, in which it was held that the fact that, at the time of the conception of the child, the mother was the wife of another did not overcome the presumption arising from birth in wedlock. The case is interesting, and in many respects directly in point.

Before taking it up we will notice the provisions of Section 341, Revised Statutes 1909, relating to the status of children born before the marriage with each other of the parents. We lately had occasion to carefully consider this statute in the case of Busby v. Self, 284 Mo. 206, in which we said that in its enactment the Legislature spoke as the mouthpiece of the public policy of the State, and in this respect it is pertinent to the construction of the laws relating to the same subject as administered in this jurisdiction. We held, as we were bound to hold, that the words of this section meant what they said, and applied to adulterine issue. The mind of the Legislature is evident in the terms of this act. It did not embrace children born in lawful wedlock, because, under the law as it then existed, these were already legitimate. Their birth was as open and visible as was the marriage relation in which it occurred. Their conception involved an issue uncertain at its best and revolting in its details, and over which courts

have no ambition to preside unless necessary to the ends of justice. This healthy sentiment was evidently in contemplation of the Legislature when it inserted as a condition of its statutory legitimation, *recognition* of the child by the husband. It·was aware of the presumption of legitimacy which attended every child born in lawful wedlock, and therefore carefully inserted the word "afterward." From this statute we cannot infer the absurd intent to give the natural child whose parents should postpone their marriage until after its birth an advantage over one whose parents had been more prompt in the performance of that duty. Its obvious intent was to preserve to the latter the advantage of the legal presumption arising from its birth in wedlock. In using the word "recognize" in the same connection, it deferred to the superior advantage of the natural parents of a child to judge of their own relation to it.

It is illogical to say that one who may· adopt a stranger as his child and heir, should not be permitted, as against himself, to determine who is his natural child and heir. In Busby v. Self, supra, at page 215, we said on the subject: "So far as the guilty father is concerned, the marriage and recognition is equivalent to the adoption provided for by statute in other cases. . . . It will be noted that when the parties are married the act of the husband alone creates this relation, and his estate alone is involved in this proceeding." It is this principle which gives its controlling force to the presumption that a child born to the wife in the house of her husband is his child. This may not be true under all circumstances and for all purposes, but these appellants are claiming under Bower as his heirs, and are bound by the situation which he has created. His acknowledgment of paternity binds them, and that he heartily acknowledged it at all times after its birth is not only conclusively proven but is undisputed. From the vantage point of his own house

285 Mo.—11

he has announced that he is the father of this child and no one has disputed him otherwise than with a presumption. That presumption having been destroyed, so far as available to the appellants, by the deliberate act of the one by whose right they claim, would seem to leave them no ground on which to stand in this appeal. We do not, however, think it improper to consider this record from the standpoint that the presumption arising from the birth of the child in lawful wedlock may be disputed by showing the fact to be otherwise.

II.  The undisputed facts in the record leave no doubt in our mind of the paternity of this child. Its mother has testified that it is the child of the husband in whose house it was born. The competency of her evidence to prove her own adultery is challeng-

Divorce by Agreement. ed. There being an irreconcilable conflict of authority on this question we will put her evidence aside and, without an expression of our own opinion, only refer to the direct and positive testimony of her sister for the purpose of showing that evidence was invited by the respondents as to the conjugal relations of Martha with Mr. Jackson, her then husband, during the time covered by the inquiry. That Mr. Jackson was living and in the neighborhood at the time of the trial appears inferentially in the record.

Martha went with her four children to her sister in St. Francois County on August 15, 1908. Jackson instituted suit for divorce against her on September 19th. Sometime in October, both Bower and Jackson went to St. Francois County to see her. The result was that before the end of that month she took her children home to Texas County and tried Jackson again with unsatisfactory results. About March 1, 1909, both Jackson and Bower prepared and almost immediately filed suits for divorce against their respective wives. Judgment of divorce was rendered in each at the May term of the Texas Circuit Court. The suit of Bower was a friendly one, Mrs. Bower appearing by attorney, and

taking land, livestock and money in exchange for her unfaithful husband, who married his paramour immediately. Rejecting the uncontradicted testimony to that effect these admitted facts show that all these things were done by agreement between these four persons, Jackson and wife and Bower and wife, the last named being represented by one of the attorneys now before us in this suit; that after March 1, 1909, the law would imply no conjugal relation between Jackson and his wife by reason of the divorce suit pending between them, and that the statement in his petition that before it was filed her conduct had been such as to make it impossible for him to live with her would imply, as between Jackson and his wife, a previous hiatus in such relations.

We think that the evidence fails to overcome the presumption arising from the fact that the child Mary was born in lawful wedlock between her mother and Bower. This necessarily disposes of the whole case, and the judgment of the Texas County Circuit Court is therefore affirmed. *Ragland* and *Small, CC.*, concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opioion of the court. All of the judges concur.