Shirley WATTS, Respondent,

v.

Willis A. WATTS, Appellant.

No. 22879–938.

Kansas City Court of Appeals.
Missouri.

May 4, 1959.

Claude M. McFarland, Kansas City, for appellant.

Moss H. Silverforb, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff sued defendant for divorce and custody of an infant child alleged to be the issue of their marriage. Defendant filed denial, cross-filed, and prayed for a decree of divorce. From a decree adjudging her a divorce, granting her custody of said child, awarding her an allowance of $15 per week for child maintenance and other allowances as suit money, and dismissing defendant's cross-bill, defendant appeals.

■ This case was hotly contested and a very large volume of highly conflicting evidence was produced. The chief issue was the parenthood of the child. We are required to review the whole record and reach our own conclusion but where, as here, the decision depends largely upon the credibility of the witnesses, we must give due deference to the conclusion of the trial judge who saw and heard all of the witnesses; and we are not authorized to set aside the judgment unless clearly erroneous. Thomas v. Thomas, Mo.App., 288 S.W.2d 689, 696; Section 510.310 RSMo 1949, V.A.M.S.

To attempt to set out all of the evidence, or to refer specifically to all of the testimony given by the various witnesses, would be to make this opinion unconscionably verbose. The parties were married in 1950 and finally separated December 26, 1956. Defendant was an "over the road" truck driver and earned some $6,000 per year. He was, necessarily, absent from their home, in Kansas City, a large part of his time. Plaintiff also was employed during a part of the period of the marriage.

There was testimony to the effect that defendant had repeatedly, over a long period of time, charged plaintiff with marital misconduct in that she had kept company with various men; that he had created disagreeable and humiliating scenes in the

presence of mutual friends and acquaintances; that he had physically struck her on two occasions; that he had told her, when she was in hospital for treatment for suspected tuberculosis, that he hoped that she would not recover; that he had, on the latter occasion, cruelly and maliciously referred to the death of her mother, in that hospital, caused by tuberculosis; and that he had publicly and privately charged that the child above referred to was the child of another man, whom he named in his cross-claim for divorce. This testimony is such that, if believed and if the charges are untrue, establishes grounds for divorce on behalf of plaintiff.

However, defendant offered much evidence tending to prove that plaintiff was guilty of grave marital misconduct, such as would fully justify a finding to the effect that she is not the innocent and injured party but that she has offended against the sanctity of the marriage relationship to such an extent that she is unworthy of the protection of the law which she invokes. The evidence on behalf of the respective parties is in irreconcilable conflict. The truth could be discovered only by the chancellor in judging the credibility of the witnesses, and the weight to be given their testimony.

However, probably final determination of the case depends on, more than on any other question, the truth of defendant's contention that the child is that of another. If that is true then it corroborates defendant's charges of plaintiff's misconduct, and explains some of his actions and alleged misconduct.

The chief evidence on which that allegation rests is that the man charged with being the father was the brother of the lady manager of the Motel where plaintiff and defendant lived during a part of their married life; that he visited his sister at the Motel from time to time; that when plaintiff's doctor examined her to determine if she suffered from a cyst or tumor on the ovary and informed her that she was pregnant, she volunteered the information to him that defendant was not the father of the child; that she told defendant, on December 20, 1956, that he was not the father of the child; that she told defendant's mother that defendant was not the father of the child; that she wrote defendant a letter, from the hospital where she was under observation for suspected tuberculosis, that the child was not his (the letter was in evidence); that she named the child "Denise", the suspected true fathers' first name being "Dennis"; and that the latter person took her to the hospital for her accouchement and visited her there after the child was born. This evidence, indeed, is sufficient to raise a strong suspicion that defendant is not actually the father of the child, even though plaintiff attempted to explain and deny it.

■ The child was born in lawful wedlock, on April 14, 1957. The attending physician gave it as his opinion that it was a six and one-half or seven months child. If he is correct in that respect, the child probably was conceived in September, 1956. Of course, if it is a normal 280 day child, conception probably occurred in July, 1956. The doctor's opinion is, after all, but an opinion and, while it constitutes substantial evidence of the fact stated, it is not conclusive, but will be considered along with all of the other evidence.

The testimony was that, on August 18, 1956, the parties separated. Defendant stated that he had no marital relations with plaintiff from that time until December 26, 1956; which was after defendant said that plaintiff had told him that she was pregnant by "Dennis". However, defendant admitted that he and plaintiff were together on numerous occasions after August 18th and prior to December; that he would pick her up and they would go driving and discuss their problems; that, on some occasions in October, November, and December, they would go to his home, and would visit and drink coffee, but that they did not have sexual relations. Plaintiff

testified to the effect that they had sexual relations a number of times during the entire period, and there was other testimony to the effect that the couple were alone on many occasions during this period. Defendant freely admitted being with plaintiff, alone, for several hours at a time in October and November, 1956, but stoutly denied that he was with her from August 18th until October 1st. He also denied having had sexual relations with her at any time after August 18th until December 26th when, he admitted, he did have such relations with her.

"Every child born in wedlock is presumed to be legitimate. Public Policy sanctions this view. Bower v. Graham, 285 Mo. 151, 225 S.W. 978; Gates v. Seibert, 157 Mo. 254, loc. cit. 272, 57 S.W. 1065, 80 Am.St.Rep. 625; Busby v. Self, 284 Mo. 206, 223 S.W. 729. Such presumption in favor of legitimacy of children born in wedlock is the strongest known to the law, and the Courts in their righteous zeal to protect the innocent offspring will not permit this presumption to be overthrown unless there is no judicial escape from such a malign conclusion. (Cases cited.)" Ash v. Modern Sand & Gravel Co., 234 Mo. App. 1195, 122 S.W.2d 45, 50; Bernheimer v. First National Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745, 751.

This Court held, in Boudinier v. Boudinier, 240 Mo.App. 278, 203 S.W.2d 89, 98, that the presumption that a child born in lawful wedlock is the child of the wedded father, is not absolute but is rebuttable. That ruling has not been criticized by any Missouri Court. But the case at Bar, on the facts, is so dissimilar to the Boudinier case that the rule there announced has but little application here.

Here, the child is presumed to have gone through the normal period of gestation, 280 days. If so, it was conceived at a time when, under all of the evidence, the parties were cohabiting as husband and wife and, if it was a six and one-half months child, and was conceived during the limited period from August 18th to October 1st, yet the evidence is to the effect that defendant had access during that period, having been with plaintiff, alone, a number of times, according to the evidence. True, he denied having had sexual relations from August 18th until December 26th; but he did admit having had intercourse on that date, when he believed, according to his own testimony, that she was pregnant by "Dennis". No Court will cast a bar sinister on the escutcheon of a child under such evidence as that.

 The chancellor believed the testimony of plaintiff and her witnesses and found her to be entitled to a divorce, and to maintenance for the support of the child of the marriage. We cannot say that the judgment was erroneous.

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.