Mary L. BROWN, as Guardian of Estate of Bryan Earl Johns, a Minor, Respondent,

v.

Hazel CONWAY, as Administratrix of Estate of Charles Henry Johns, Jr., Deceased; Hazel Conway, Eugene Johns and Percy Johns, Appellants,

S. S. Brown, As Administrator Ad Litem for Estate of Willa Lee Johns, Deceased; Pennsylvania National Mutual Casualty Insurance Company; J. C. Whitney Company; Allen Camper Manufacturing Company, Inc.; and James Spradling, or his successor in office, as Director of Revenue of the State of Missouri, Respondents.

No. WD 30317.

Missouri Court of Appeals, Western District.

April 7, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1980.

Application to Transfer Denied June 10, 1980.

Wyman Wickersham, and Stephen G. Scholl, Kansas City, for appellants; Popham, Conway, Sweeny, Fremont & Bundschu and Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, of counsel.

Allan R. Browne, Kansas City, for respondent; Ennis, Brown & Jensen, Kansas City, and George Warner, Jr., Meridian, Miss., of counsel.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

PRITCHARD, Judge.

In this declaratory judgment action, the sole issue presented is whether, under the facts, the trial court was correct in adjudging that Bryan Earl Johns was the son and heir of Charles H. Johns, Jr., deceased.

The instant action arose out of a head-on collision on U.S. Highway 69 near LaCyne, Kansas, on July 3, 1976. There was then a caravan of three campers loaded with relatives and friends for an outing in Oklahoma. Charles was driving the lead camper when it was struck by a small car. A fire ensued in which Charles, his wife, Willa L. Johns, a cousin, George Hill, Willa's son, Michael Pearson, and two children of Charles and Willa, Latanya and Patricia Johns, all died, a total of six. Renee Pearson, Willa's daughter, was the sole survivor, having escaped through the left window toward the rear of the camper. The trial court found that all these persons died simultaneously, but that finding is not here challenged.

On August 30, 1960, Willa, then going by the name of Pearson, was and had been for some time living with Otis March, at 35th and Euclid in Kansas City, but she was not married to him. On that date, Willa gave birth to a son who was named Bryan Earl Pearson. The K. U. Medical Center records indicated that the father of the child was unknown and that Otis March was responsible for medical costs. The birth certificate issued then showed Otis March as the father. Charles lived with his then wife, now Daisy Fuller, across the street from March. Charles divorced Daisy in 1963, and married Willa on June 13, 1966. K. U. Medical Center records showed that Willa used the name of "Johns" for more than two years prior to their marriage.

In August, 1966, Willa filed a verified petition in the Jackson County Circuit Court stating that both Bryan and Latanya were the children of Willie and Charles H. Johns; that the mother and natural father were legally married and were then husband and wife; and it asked that the children's names be changed to that of their natural father. On the hearing, Willa testi-fied: "Q. Who is the natural father of these children? A. Charles Johns, Charles H. Johns. Q. Now, after the date of the birth of the younger child, Latanya Ann, did you then legally contract a marriage with the father of the children? A. Yes, sir. THE COURT: How does Mr. Johns feel about this? A. He's the one that wanted it did." Appellants, by Point I, challenge the trial court's consideration of this evidence upon the ground that it was inadmissible hearsay.

Renee Pearson, who escaped from the burning camper, testified that Charles, who called Bryan "Chuckie", would always say that he was his son, so introduced him, and he treated him like his own son. Renee and Michael Pearson were always referred to by that last name, but Patricia, Latanya and Chuck were called "Johns". At the time of the accident, Renee had been living at 3304 East 60th Street for 12 to 13 years. Before that she lived at 35th and Euclid with her mother and Otis March. Charles had treated her as a daughter, but there was never any doubt that she was not.

At the time of trial, Bryan was 17 years old, in the 11th grade, and was living with his grandparents in Meridian, Mississippi. Before the accident, he was living with Charles and was in school, and he had lived on Euclid when he was 3 or 4 years old with Charles and then moved with the family to 3304 East 60th Street. On September 4, 1970, he was baptized in the Missionary Baptist Church, 46th and Prospect, under the name of Bryan Earl Johns. Charles called him "Chuck" or "Chuckie", and introduced him by the last name Johns, as he did Patricia and Latanya. Michael and Renee were introduced by Charles by the last name Pearson. Bryan was called "Pearson" as a child because that was his mother's maiden name. Bryan testified: "I didn't have no legal father at the time, so my mother just went and put her maiden name."

Thomas Brown, Willa's brother-in-law and husband of Mary Brown, Bryan's guardian, testified that he knew Charles Johns, Jr., since 1967 when he went to work

for General Motors. Charles and Willa were married during the time he knew them, and he was in and out of Charles' home on visits during which he saw and knew Bryan, Latanya, Patricia, Willa, Michael and Renee, all of whom lived in Charles' house. Charles used the terms "Chuckie" or "son" when referring to Bryan: "A. Well, anytime he ever introduced him when he was with me was, this is my son Bryan or Chuckie." Charles and Chuckie were "pretty tight." Brown knew that at one time Bryan lived with Otis March, whom Willa referred to as her husband. Willa's sister, Mary Brown, testified that she had always assumed Bryan was Charles' son—there was no point in clarifying it. On cross-examination, Mary acknowledged that she knew Willa was living with Otis March at 35th and Euclid, and she thought that Bryan was born at that time, and she thought they split up after Bryan was born, at which time Willa was not married to Charles Johns, Jr.

Stuart Horne, of Quitman, Mississippi, is Willa's father. He knew Charles who came to his home in Mississippi several times, and Stuart visited in Charles' home. In 1959, Charles told him that he was going to marry Willa. He knew Willa lived for a while with Otis March (who did not show up at trial). Charles told Stuart, "he knowed Bryan was his. He said he was going to raise him, because he had three children by her", Patricia, Tina and Bryan. Willa told him that Charles was the father of Bryan about 1963 or 1964, when Bryan had the last name of Pearson. Otis Earl March told Stuart on the phone recently, that Bryan's middle name "Earl" "wasn't none of his", and that Bryan "wasn't none of his boys." Stuart's wife, mother of Willa, confirmed Stuart's testimony—Otis March told her on the telephone that he was not Bryan's father, and both Willa and Charles told her that Bryan was Charles' son.

Contrary evidence, which on the issue of credibility was for the trial court to evaluate, was this: Catherine Chapple, who worked with Willa at DIT-MCO Company, testified that Willa told her that Charles was not the father of all her children, and

mentioned Michael Pearson, Renee Pearson and Chuckie Pearson. Latanya and the youngest child were Johns. Vivireen Carter, a neighbor, testified that Willa said that Chuckie's father lived in Chicago. Dorothy Ruth Simpson, also a co-worker of Willa, testified that Willa had told her Chuckie was not Charles' son but that he was Otis March's. Charles' former wife, Daisy, to whom he was married at the time Bryan was born, testified that Charles had told her that Bryan was the son of one Jim Thomas, who was living with Willa and Otis March at the time. Hazel Conway, Charles' sister, testified that Otis March told her he was the father of Renee, Chuckie and Latanya. When Otis was in town, Willa would take the children to see him.

The rules concerning the pedigree exception to the inadmissibility of hearsay evidence is stated in *Osmak v. American Car & Foundry Co.*, 328 Mo. 159, 40 S.W.2d 714 (Mo.1931), where the testimony of a witness that her father and mother had stated in her presence that they were not married, and that the father had never been divorced from his wife in the old country (the issue being the alleged wife's right to maintain a suit for penalty for wrongful death). The court said, page 718, "The declarations concerned matters of family history; they were made ante litem motem; and the declarants were dead. The statements fall within a well-established exception to the hearsay rule and were clearly admissible. *Imboden v. Trust Company*, 111 Mo.App. 220, 86 S.W. 263." See also *Gordon v. Metropolitan Life Ins. Co.*, 238 Mo.App. 46, 176 S.W.2d 506 (1943), in which the *Osmak* case is cited and quoted; *Haley v. Metropolitan Life Insurance Company*, 434 S.W.2d 7, 10[3, 4] (Mo.App.1968); and see the discussion, Wigmore on Evidence, Chapter 51, "Declarations About Family History (Pedigree)." The conditions therein stated for admissibility of pedigree declarations are here satisfied: § 1481, the declarant must be unavailable (here, both Willa and Johns are deceased); § 1482, there must be a circumstantial indication of trustworthiness, "It is natural for persons to talk of

their own situations and of their families. The evidence is in its nature of an unsuspicious kind; it is generally brought from remote times, when no question was depending or even thought of, and when no purpose would apparently be answered." [Quoting from *R. v. Eriswell*, 3 Term R. 707, 720 (1790)]; § 1483, the declarations must have been made before controversy, "ante litem motam," that is, before there is any motive to falsify. Here, Willa's verified petition for Bryan's change of name, and her in-court testimony relative thereto, had simply to do with that ex parte proceedings, and the matters of genealogy and inheritance rights present in this case had not arisen—all the parties were then alive. Appellants seem to argue that the declarations did not come prior to the change of name proceedings, and thus the condition of ante litem motem was not satisfied. That cannot be because the controversy arose in this suit about 10 years after the declarations were made, and before there could have been any issue of Bryan's right of inheritance. And, at § 1495 of Wigmore, it is said, "According to the general testimonial principle (citing sections), the testimonial statement may be in any form. It may be oral or written; it may consist in words or in conduct; it may be made by the declarant's own writing, or by assenting to or adopting the writing of another. * * * That the assertion is made in the course of a deposition or trial testimony is immaterial, so long as the litigation does not involve a controversy rendering the statement biased and untrustworthy." This latter proposition is stated in *Estate of Fedina v. Fedina*, 491 S.W.2d 552, 560 (Mo.1973), quoting 29 Am.Jur.2d, Evidence, § 512, p. 568.

█ Although there has been no case found which touches upon the admissibility of verified petitions and testimony in connection therewith, as exceptions to the hearsay rule in pedigree matters, there are analogies. In *Wren v. Howland*, 33 Tex. Civ.App. 87, 75 S.W. 894 (1903), recitals in a petition for divorce, filed by the mother of a grantor, stating who was her husband at the time, and who was the father of grantor, were admissible, and a sworn petition of

a former owner of realty from which complainant sought to eject those in possession, that complainant was her son, was held to be admissible in *Melton v. Anderson*, 32 Tenn.App. 335, 222 S.W.2d 666 (1948), as a declaration as to pedigree. In *Henderson v. Cargill*, 31 Miss. 367 (1856), the legitimacy of brothers and sisters of an intestate, who were seeking to share in his estate, was in question. It was held that allegations of their mother against their father, and his answer, in a bill for divorce, admitting the marriage, was admissible. See Anno. Evidence—Legitimacy or Parentage, 31 A.L. R.2d 989, citing these cases. See also *Burrell v. Westbrook, et al.*, 163 S.W.2d 695 (Tex.Civ.App.1942), holding that an application of deceased, in a guardianship proceedings, that applicant was the grandfather of one who sought to be substituted as administratrix of deceased's estate, and the court order of appointment of deceased's, was admissible as an exception to the hearsay rule; *Sherrill v. Estate of Plumley*, 514 S.W.2d 286 (Tex.Civ.App.1974), where recitals in an 1892 "heirship deed" were admitted to show that one Jennie C. Pettus was a daughter of Richard Plumley, deceased, the court saying, page 292, "We hold that the recital in the heirship deed was admissible as a statement of pedigree and family history under that exception to the hearsay rule. The essentials of the exception are stated in 2 McCormick & Ray, Texas Law of Evidence 184–194, Chapter 22 (2nd ed., 1956). They were met by proof that all of the declarants were dead, that they were related to each other, that the recital was made ante litem motam (before the controversy arose) and it appears that as to whether Jennie C. Pettis (or Pettus) was an heir of Richard Plumley, declarants W. H. Plumley, A. M. Plumley and Lizzie Plumley had no motive to deceive at the time the declaration was made."; and *Williams v. Newcomb*, 16 Mo.App. 185 (1884), concerning recitals in a deed that David S. Wilson, one of the grantees in a deed under which plaintiff claimed, was a son of Zachariah Wilson, the court saying, page 190, " 'Testimony as to pedigree is not to be tested by the ordi-

nary rules of evidence. The subject necessarily requires relaxation of those rules; and it is of course always treated as an excepted case. Hearsay evidence, or anything which shows a general reputation, is admissible to establish pedigree. The declarations of persons who from their situation were likely to know, are competent evidence; and so, too, the recitals in deeds, though not admissible in other cases, are competent to prove pedigree.' " Clearly, under the foregoing authorities, the verified petition of Willa for Bryan's change of name, and her in-court testimony were admissible as pedigree exceptions to the rule against hearsay evidence, and appellants' Point I(A) and (B) challenging that evidence is ruled against them.

■ By Point II, appellants say it was error to receive the evidence as to what Otis March said with respect to Bryan being "none of his" and not his child. No objection was made to this testimony and appellants may therefore not now complain. Besides, it was merely cumulative to other strong evidence in the case as to Bryan's parentage. The point is overruled.

■ Appellants contend by Point III that the trial court erred in finding that Bryan was the natural and legitimate son of Charles because (A) it was against the weight of the evidence. As noted above, there was conflicting evidence on the issue, which was for the trial court to determine, and quite apparently it rejected the evidence tending not to establish legitimacy. In this case, there exists no firm belief that the judgment is wrong, and there appears to be no reason that this court should disregard the admonition of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), that a ruling that the judgment is against the weight of the evidence should be exercised with caution. Here the pedigree evidence of parentage, and the declarations of Charles that Bryan was his son, his conduct in holding him out as his son, and the close ties between the two clearly point to an acknowledgment on Charles' part that Bryan was indeed his son. This evidence is substantial, and is not destroyed by the facts that

Bryan's name was listed as "March" on the original birth certificate, that Otis March was listed as being responsible for the hospital bills at his birth, or that Willa was living with March at the time of birth. See *Bower v. Graham*, 285 Mo. 151, 225 S.W. 978, 979 (1920), where although the evidence of recognition of the child by its natural father after wedlock with its mother was undisputed, and the child was conceived when its mother was married to another, the court said, quoting *Gates v. Seibert*, 157 Mo. 254, 57 S.W. 1065, 1068 (1900), " 'A legitimate child under our law is one born in lawful wedlock or of a widow within ten months after the death of her husband, or born before the marriage of its parents, who afterward marry, and receives the recognition of its father; and one such child is just as legitimate before the law as the other.' " To the same effect, see *Breidenstein v. Bertram*, 198 Mo. 328, 95 S.W. 828 (1906); *Busby v. Self*, 284 Mo. 206, 223 S.W. 729 (1920); and *Drake v. Milton Hospital Ass'n*, 266 Mo. 1, 178 S.W. 462 (1915). By Point III(B), appellants say the trial court misapplied the law in finding that Charles had recognized Bryan as his own son within the meaning of § 474.070, RSMo 1969. That statute provides: "If a man, having by a woman a child or children, afterward intermarries with her and recognizes the child or children to be his they are thereby legitimated." In *Lowtrip v. Green*, 363 Mo. 619, 252 S.W.2d 524 (1952), it was said the three supporting facts essential under the statute to establish legitimation are actual paternity, intermarriage with the mother, and recognition by the man that the child is his. Certainly, Charles' declarations, made to family members that Bryan was his son, and which distinguished between him and other children (Pearsons, who were not his) by calling him Johns, brings this case within the *Lowtrip* rule. This is direct and positive evidence of paternity and recognition of Bryan as his son, so lacking in appellants' cited case of *Mooney v. Mooney*, 244 Mo. 372, 148 S.W. 896 (1912); and in the *Lowtrip* case, supra, which are thereby distinguished. The trial court properly accorded the statute a liberal con-

struction so as to afford illegitimate children the utmost protection. *Lowtrip,* supra, page 526.

Although appellant's statement of facts is inadequate in that it fails to set forth those favorable to respondents, the facts are ascertainable from all the briefs, and respondents' motion to dismiss the appeal is overruled.

The judgment is affirmed.

All concur.