

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| IN THE MATTER OF THE CHARLES H. STIX TESTAMENTARY TRUST DATED AUGUST 7, 1945, AND THE CLARA F. STIX TESTAMENTARY TRUST DATED APRIL 20, 1943 | ) ) ) ) ) ) ) ) ) ) | No. ED102055 <br><br> Appeal from the Circuit Court of the City of St. Louis 1222-PR00313 <br><br> Honorable Philip D. Heagney <br><br> Filed: April 28, 2015 |

Charles Grace, Nancy Grace, and William Grace (respectively "Charles," "Nancy," and "William," and collectively "Appellants") appeal the probate court's grant of summary judgment in favor of Justin Grace ("Respondent"), finding that Respondent was a qualified beneficiary to two testamentary trusts at issue because he is the descendant of Appellants' brother Robert Grace. We affirm.

### I.       BACKGROUND

Appellants are the grandchildren of Charles Stix ("Charles") and the great-grandchildren of Clara Stix ("Clara"), Charles' mother. The provisions of the last will and testament of both Clara and Charles created trusts for the benefit of their descendants, effective April 20, 1943 and August 7, 1945, respectively. Charles' daughter Ann Stix Grace ("Ann") was the sole lifetime beneficiary of both trusts following the death of Clara and Charles and received all income from each trust.

Both of the trusts terminated upon Ann's death on January 27, 2012. The trusts used slightly different language to dispose of the estate following Ann's death. Clara's trust provided that upon Ann's death, her trust estate would be divided among Ann's living children and, if any of Ann's children predeceased her, that child's portion would pass to that child's descendants. Charles' trust provided that upon the death of Ann, the Trustee was to distribute all the money and other property then constituting the trust estate in equal shares per stirpes to Ann's living descendants. Although the trusts used different language, the class of "descendants" is identical under both trusts, with each descendant taking an equal share. The trust documents do not otherwise define the term "descendant."

Ann had five children, including Appellants Charles, Nancy, and William, as well as Robert Grace and John Grace. Robert and John each predeceased Ann, John without leaving any children. The issue in this case is whether Respondent is Robert's descendant within the meaning of the trusts and therefore entitled to Robert's share of the proceeds.

On March 28, 1985, Robert married Respondent's mother, Susan Martin ("Susan"). Respondent was born in the State of Washington on October 28, 1985, and Respondent's birth certificate listed Robert as Respondent's father. Robert and Susan divorced on October 24, 1988, also in the State of Washington. The Washington court issued a dissolution judgment with findings of fact and conclusions of law ("the Washington judgment") stating "the following child has been born *as a result of this marriage*: Justin Samuel Grace, born October 28, 1985" (emphasis added). The judgment granted Susan primary custody of Respondent and Robert liberal visitation rights.

Robert died on March 6, 1994, over six years after the divorce and when Respondent was eight years old. Robert's will left nothing directly to Respondent. Instead, Respondent asserted

2

a claim to an award in lieu of homestead under Washington law, to which was Robert's estate opposed. In settling that claim, Susan and Respondent's guardian ad litem agreed to acknowledge that Respondent was not Robert's biological child despite being born during Robert and Susan's marriage.

On Ann's death, Bank of America, N.A. as trustee for both Charles' and Clara's trusts filed a petition for declaration of rights and instructions for final distribution with the probate court. Specifically, the petition sought instructions as to whether Respondent was a qualified beneficiary as Robert's descendant. Appellants and Respondent filed cross-motions for summary judgment. The probate court denied Appellants' motion and granted Respondent's motion, finding that the Washington judgment established Respondent was a descendant within the meaning of the trust documents, and the Washington judgment collaterally estopped Appellants from relitigating Respondent's parentage. This appeal followed.

## II.    DISCUSSION

Appellants bring two points on appeal. In their first point, Appellants assert the probate court erred in granting summary judgment in favor of Respondent because Respondent is not a "descendant" within the meaning of the trust documents. In their second point, Appellants contend the probate court erred granting summary judgment in favor of Respondent because the Washington judgment should not collaterally estop their challenge to Respondent's paternity. Because the first point is dispositive, we need not consider Appellants' second point.[1]

## A.    Standard of review

Summary judgment is reviewed essentially de novo and affirmed only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *ITT*

---

[1] We may affirm a trial court's grant of summary judgment on any ground raised in the motion and supported by the record. *Clark v. Kinsey*, 405 S.W.3d 551, 553 (Mo. App. E.D. 2013).

3

*Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A defendant may establish summary judgment is appropriate by showing, (1) facts negating any one of the plaintiff's elements necessary for judgment; (2) that the plaintiff has not produced evidence sufficient for the finder of fact to find the existence of one of the plaintiff's elements; or (3) facts necessary to support a properly pleaded affirmative defense. *Roberts v. BJC Health System*, 391 S.W.3d 433, 437 (Mo. banc 2013). We review the record in the light most favorable to the party against whom judgment was entered. *Id.*

**B.     Respondent's status as a descendant**

In their first point, Appellants argue that the probate court erred in granting summary judgment in favor of Respondent because Respondent is not a "descendant" within the meaning of the trust documents. Specifically, Appellants assert that DNA evidence demonstrates that Respondent is not the biological son of Robert and was therefore not intended to be considered Ann's descendant under the language of Charles' and Clara's trusts. We disagree.

Testators may dispose of their property to whomever and in whatever manner they desire. *Sweeney v. Eaton*, 486 S.W.2d 453, 456 (Mo. 1972). If the testator is shown to have testamentary capacity, she "has the right to dispose of her property according to her own way of thinking, and it is not for courts or juries to make a will or codicil for her." *Dorsey v. Dorsey*, 156 S.W.3d 442, 446 (Mo. App. E.D. 2005) (quotations omitted). Here, Charles and Clara decided to leave contingent remainder interests in their testamentary trusts to a class they defined as "descendants," and they are presumed to have understood and intended the legal effect of that disposition. *Easter v. Ochs*, 837 S.W.2d 516, 517 (Mo. banc 1992). The trust documents did not otherwise define the term "descendant."

4

It has long been the law of this state that a child born during a marriage is legally presumed to be the husband's offspring for all purposes, including matters of probate and inheritance. The Missouri Supreme Court outlined this rule in *Bower v. Graham*, 225 S.W. 978 (Mo. 1920), a case factually similar to the circumstances here. In *Bower*, the child in question was conceived while the mother was married to one man, but born five months after she divorced and married another. *Id*. at 978-79. On the second husband's death, his siblings challenged the child's paternity and right to inherit from his estate. *Id*. at 978. The Supreme Court held that the second husband was legally the child's father, and she was entitled to inherit from his estate. *Id*. at 978-80. The Court reasoned that the common law presumes a child born during a marriage to be the child of the husband. *Id*. at 980. Further, the second husband acknowledged paternity during his lifetime, and that acknowledgment was binding on his siblings in the probate proceeding. *Id*.

The facts are substantially similar here. Respondent was born during Robert's marriage to Susan. Under both Missouri and Washington law, Robert is therefore presumed to be Respondent's father for all purposes. See section 210.841.1 RSMo Supp. 1988[2] ("The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes"); *Miller v. Sybouts*, 645 P.2d 1082, 1084 (Wash. 1982) (citing RCW 26.26.040,[3] providing a man is presumed to be natural father of a child if he and the child's natural mother are married when the child is born).[4] Further, the Washington

---

[2] This version of the statute was in effect at the time of Robert and Susan's divorce and the Washington judgment determining Respondent was born as a result of the marriage. This section has been subsequently amended but this language remains unchanged. All further references to section 210.841.1 are to RSMo Supp. 1988.

[3] This section was in effect at the time of Robert and Susan's divorce and the Washington judgment determining Respondent was born as a result of the marriage. This section has been subsequently repealed and replaced by the current version of the Washington parentage statute, RCW 26.26.116, but this legislative change is not relevant to the facts here.

[4] Because the law of Missouri and Washington is identical on this issue, we need not decide the choice of law problem.

court adjudicated the issue of Respondent's paternity and the Washington judgment determined him to be Robert's son. Also, no one formally challenged that paternity determination at the time it was made or in any of the years following until Robert's death over six years later. *See Matter of Burley*, 658 P.2d 8, 13 (Wash. Ct. App. 1983) (citing RCW 26.26.060(1)(b),[5] requiring that challenges to determine the non-existence of a father-child relationship be brought within a reasonable time).

Appellants admit the Washington judgment is final and determinative and do not dispute Robert was legally Respondent's father for purposes of custody and child support. However, they dispute that it is binding on them for probate purposes. This argument must fail. Under *Bower*, because Robert acknowledged paternity during his lifetime on Respondent's birth certificate and in the divorce proceeding, that acknowledgment is binding on other parties with property interests in his estate, just as it was on the decedent's siblings in *Bower*. *Bower* has been repeatedly cited favorably by subsequent Missouri opinions, including those contemporary to the execution of Clara's and Charles' trust documents. *See Bernheimer v. First Nat. Bank of Kansas City*, 225 S.W.2d 745, 751 (Mo. 1949); *Boudinier v. Boudinier*, 203 S.W.2d 89, 97 (Mo. App. 1947). Testators are presumed to know and understand the meaning and effect of the terms used in their probate documents as defined under Missouri law. *Easter*, 837 S.W.2d at 517. "Descendant" as it was used in the trust documents therefore includes a child born in Respondent's circumstances.

The litigation surrounding Robert's estate and the subsequent settlement do not change this outcome. Robert died in 1994, over six years after the divorce and when Respondent was

---

[5] This section was in effect at the time of Robert and Susan's divorce and the Washington judgment determining Respondent was born as a result of the marriage. This section has been subsequently repealed and replaced by the current statute of limitations, RCW 26.26.530(1), requiring a parentage action to be commenced within four years of the birth of the child.

eight years old. In settling Respondent's claim to an award in lieu of homestead, Susan and Respondent's guardian ad litem agreed to acknowledge in the settlement that Respondent was not Robert's biological child despite being born during the marriage. This acknowledgment does not negate the earlier parentage adjudication in the Washington judgment. The litigation surrounding Robert's estate was not an adjudication of Respondent's parentage and no court except the Washington court ruled on the issue.

The New Jersey Supreme Court addressed a similar set of facts in *In re Trust Created by Agreement Dated Dec. 20, 1961*, 765 A.2d 746 (N.J. 2001). In that case, several beneficiaries challenged the paternity of another beneficiary, Jenia, thereby contesting her status as a beneficiary. *Id.* at 749, 751. Jenia was born during her purported father's marriage to her mother. *Id.* at 749. Upon their divorce, the purported father signed an acknowledgment that Jenia was his daughter, and the trial court made a finding of fact that Jenia was "born of the marriage." *Id.* at 750. Later, in litigation regarding an unrelated trust, the purported father testified he did not consider Jenia to be his child, but that apparent disavowal was not adjudicated by any court. *Id.* The New Jersey Supreme Court held no third party could collaterally attack Jenia's parentage as previously determined by the divorce proceeding. *Id.* at 759. It reasoned that the New Jersey legislature chose language providing for paternity judgments to be "determinative for all purposes." *Id.* at 756. Further, parentage determinations are meant to be final, and subsequent claims or intimation of third parties, including the purported father himself, are insufficient to overcome the prior judgment. *Id.* at 755-56.

We find the reasoning of the New Jersey Supreme Court to be persuasive. The Washington judgment making a finding of fact that Respondent was "born as a result of [Robert and Susan's] marriage was a final adjudication of Respondent's parentage for all purposes." Just

7

as the New Jersey statute, the Missouri legislature used language mandating that judgments making findings on the issue of paternity are "determinative for all purposes." Section 210.841.1. Therefore, statements made by the parties in subsequent, unrelated litigation, on issues not adjudicated by the later court, cannot overcome the finality of the original parentage determination.

Finally, we address Appellants' claim that their Due Process rights were infringed, in that they did not have the opportunity to participate in the original litigation of Respondent's parentage and their property interests were affected. On this issue, we again find the reasoning of the New Jersey Supreme Court in *In re Trust* to be persuasive: "We note that the purported economic right to become eligible for an unspecified share of trust proceeds occupies a lower place in the hierarchy of rights as compared to a putative father's right to the parent-child relationship." *In re Trust*, 765 A.2d at 759. Robert claimed paternity on Respondent's birth certificate and he again claimed paternity at the time of his divorce. His right to assert paternity over his legal child overcomes any right to a slightly larger trust benefit Appellants may have. Therefore, Appellants' Due Process claim must fail.

Respondent is Robert's legal child, both by presumption and as adjudicated by the Washington court. Appellants cannot relitigate the matter decades later. The probate court did not err in granting summary judgment in favor of Respondent and finding he is a "descendant" within the meaning of the trust documents. Point one is denied.

## III. CONCLUSION

The probate court's grant of summary judgment in favor of Respondent is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Roy L. Richter, P.J., and
Robert G. Dowd, J., concur.