Barbara Jeanette MOORE, Respondent,

v.

Roy Clyde MOORE, Appellant.

No. 72682.

Missouri Court of Appeals,
Eastern District,
Division One.

July 28, 1998.

Michael A. Turken, Turken & Associates, P.C., St. Charles, for appellant.

John C. Maxwell, St. Charles, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Roy Clyde Moore ("husband"), appeals the judgment of the Circuit Court of St. Charles County wherein it entered a decree of dissolution dissolving husband's marriage to respondent, Barbara Jeanette Moore ("wife"), and entered a qualified domestic relations order ("QDRO"). We remand for clarification of the judgment consistent with this opinion.

Husband and wife entered into marriage on May 13, 1961. In March of 1994, wife filed a Petition for Dissolution of Marriage in the St. Charles County Circuit Court. On August 18, 1995, the trial court entered its Decree and Judgment of Dissolution of Marriage ("original decree"). In the original decree, the trial court ordered husband to "assign [to wife] one-half of those benefits which he would receive based upon his employment with McDonnell Douglas Corporation as of today's date." However, wife was not to "receive any increased benefits as a result of [husband's] future employment." This one-half related to, *inter alia*, husband's "Employee Savings Plan of MDC— Salaried Employee" (the only asset at issue here). Testimony given at the trial established the Employee Savings Plan had a value of $12,008.00 on January 12, 1995, the first day of trial.

Neither husband nor wife filed any post-trial motions. On September 15, 1995, the trial court *sua sponte* entered an Amended Decree and Judgment of Dissolution of Marriage ("first amended decree"). In this decree, the trial court awarded wife "the Employee Savings Plan of MDC—Salaried Employees, having a total value of $12,-008...." Furthermore, the trial court stated it shall execute a QDRO to assign to wife a portion of husband's vested benefits payable under all of his pension plans with

McDonnell Douglas Corporation. This decree further ordered husband to "assign $12,008 of his [Employee Savings Plan Of MDC—Salaried Employee] to [wife,]" and went on to state wife "shall not receive any increased benefits as a result of [husband's] future employment."

On September 18, 1995, wife filed a motion for reconsideration or, in the alternative, for new trial. Similarly, on September 22, 1995, husband filed a motion for reconsideration of the first amended decree, in light of a significant increase in the values of the property awarded to the parties.

While the trial court denied husband's and wife's motions for new trial, it did partially sustain wife's motion to reconsider, culminating in the trial court's entry of a second amended decree on October 16, 1995.

From the first amended decree to the second amended decree, there was no change in the language awarding wife "the Employee Savings Plan," ordering husband to assign "$12,008 of his Employee Savings Plan" to wife, prohibiting wife from receiving any increased benefits as a result of husband's future employment, and ordering the execution of the QDRO.

The trial court entered a QDRO ("QDRO# 1") on April 26, 1996. In QDRO# 1, the trial court ordered husband to assign to wife the balance of his Employee Savings Plan.

On May 9, 1996, husband filed a motion to amend the QDRO, requesting the trial court award wife the sum of $12,008 from husband's Employee Savings Plan. The trial court denied this motion on August 9, 1996.

On August 5, 1996, husband submitted to the trial court a proposed amended QDRO awarding wife $12,008 from husband's Employee Savings Plan, plus any investment gain or loss on said $12,008 from the date of the entry of the original decree to the date of distribution. The trial court denied this proposed amendment to QDRO# 1 in its order of August 9, 1996.

In response to this denial, husband filed a second motion to amend the QDRO on September 30, 1996. On October 18, 1996, this motion was argued and submitted, and during the following several months, husband and wife exchanged correspondence and drafts regarding further QDRO revisions.

On February 6, 1997, husband drafted a letter requesting the trial court to approve a draft of a QDRO submitted by wife on November 4, 1996. In pertinent part, the proposed QDRO ordered husband to:

assign to [wife] from [husband's] [Employee Savings Plan Of McDonnell Douglas Corporation—Salaried Employee] the sum of twelve thousand eight dollars ($12,008.00) plus all interest and any investment gain or loss resulting from and/or attributable to said twelve thousand eight dollars ($12,008.00) from the (sic) January 12, 1995, the date upon which said Savings Plan was valued at twelve thousand eight dollars ($12,008.00) by [husband] until the date of distribution to [wife].

On June 6, 1997, the trial court entered the QDRO submitted by wife on November 4, 1996 ("QDRO# 2"). Husband appeals, contesting the trial court's entry of QDRO# 2 as beyond the trial court's jurisdiction.

In reviewing a dissolution case, we must affirm the decree if there exists substantial evidence to support it, it is not against the weight of the evidence, and it neither erroneously states nor erroneously applies the law. *Carter v. Carter*, 901 S.W.2d 906, 909 (Mo. App. E.D.1995). Furthermore, this Court "must accept as true the evidence and permissible inferences therefrom in the light most favorable to the trial court's decree and disregard all contrary evidence and inferences." *Id.* When faced with conflicting testimony, this Court defers to the trial court's determination concerning the credibility of witnesses. *Id.*

In his first point on appeal, husband contends the trial court exceeded its jurisdiction in executing QDRO# 2, which assigned to wife retirement benefits accrued after the entry of the decree of dissolution, which effectively amended the division of property in the decree of dissolution, and which did not conform with said decree. Husband claims both he and McDonnell Douglas continued to make contributions to the Employee Savings Plan over the twenty months between the

trial court's entering the original decree until the trial court's entering QDRO# 2, and claims these contributions are non-marital property and not within the trial court's power to divide.

Wife counters husband's arguments by contending the trial court did not err in entering QDRO# 2 which assigned to wife $12,008.00 plus all interest and investment gain or loss from the date of valuation to the date of distribution from the Employee Savings Plan because the trial court intended to award her the entire Employee Savings Plan. Wife further claims any increase in the value of the Employee Savings Plan from $12,008 is a result of the increased value of McDonnell Douglas stock on the stock exchange rather than the result of any contributions made by husband or his employer during the pendency of this case and prior to the entry of the second amended decree.

■ As the foregoing demonstrates, the second amended decree is internally inconsistent and the trial court's intent with respect to the division of the Employee Savings Plan is less than clear. For instance, within the second amended decree, the trial court awarded wife in section 3 *"the* Employee Savings Plan ... having a total value of $12,008 ..."* while mandating husband in section 7 "assign $12,008 *of his* [Employee Savings Plan] ... to [wife]." (Emphasis added.) The former provision implies that wife is to receive the entire Employee Savings Plan, while the latter provision implies wife is to receive only $12,008 of the total balance of the Employee Savings Plan, whatever that balance may happen to be. Moreover, the trial court's intent as to the precise distribution of the Employee Savings Plan is further clouded by the limiting language in section 7, which states wife "shall not receive any increased benefits as a result of [husband's] future employment."

Additionally, the trial court denied husband's post-trial motion seeking to limit the Employee Savings Plan award to wife to the sum of $12,008.00. Nor did the trial court grant husband's post-trial QDRO proposal seeking to limit said award to "the sum of $12,008, together with any investment gain/ loss on said $12,008, from the date of the entry of the [original decree] to the date of distribution. ..." Viewed together, one can speculate the trial court intended to award wife the entire Employee Savings Plan, which again contradicts section 7 of the second amended decree ordering husband to assign to wife $12,008 of said plan. Furthermore, the trial court did not divide the Employee Savings Plan with the same specificity as it used when dividing the IRA.[1]

Lastly, while the parties debate the cause of the Employee Savings Plan's increase in value, the record is silent as to what comprises the Employee Savings Plan, be it shares of stock, dollars, or some combination thereof, thus further complicating the issue.

Accordingly, we are unable to determine whether the trial court exceeded its jurisdiction in entering QDRO# 2, as it is not clear from the record what distribution wife is entitled to. Therefore, husband's first point is remanded for further proceedings to clarify what portion of the Employee Savings Plan wife is entitled to. *See, e.g., Plant v. Plant,* 936 S.W.2d 186, 188 (Mo.App. E.D. 1996) (holding remand for clarification of judgment as to custody of children was warranted). This may require the trial court to receive evidence regarding the value of the plan at the time of the entry of the second amended decree, as well as any other evidence regarding the Employee Savings Plan which may aid in effecting the distribution.

■ Husband argues in his second point the trial court exceeded its jurisdiction by entering a QDRO allegedly in conformity with a second amended decree of dissolution because the trial court lost jurisdiction to enter such decree according to Rule 73.01(a)(5)[2] when the trial court *sua sponte*

---

1. The trial court, in the second amended decree, awarded wife "the IRA consisting of AIM Cigna Heritage Annuity, G.T.G. Telecommunications, G.T.G. Infrastructure, MFS World Growth and VKM Prime Rate, having a total value of $69,-691.19; *further, any amount in excess of $69,-* 691.19 *shall be awarded to [wife]."* (Emphasis added.)

2. Husband refers to the 1995 version of Rule 73.01, which was in effect at the time the trial court entered the decrees involved in this case.

amended the original decree. Thus, husband contends any QDRO entered should have conformed with the first amended decree of dissolution.

Husband bases his argument on the language of Rule 73.01(a)(5) which provided that, unless the amended judgment stated otherwise, an amended judgment was considered final as of the day it was entered of record. However, the version of Rule 73.01 relied on by husband pertained to judgments amended pursuant to a party's motion. *Id.* Here, neither party filed a motion for the court to amend the original judgment. Rather, the trial court entered the first amended decree *sua sponte* under Rule 75.01.

When the trial court does not vacate the original decree before the entry of an amended decree, as was the case here, the result of the amendment is the entry of a new judgment over which the trial court retains jurisdiction. *See Moyer v. Walker,* 771 S.W.2d 363, 365 (Mo.App. S.D.1989). Therefore, the first amended decree was not final and the trial court retained jurisdiction for an additional thirty days from the date of the entry of the first amended decree. *See* Rule 75.01. Consequently, the trial court did not exceed its jurisdiction in entering the second amended decree.

Based on the foregoing, the judgment is remanded for clarification regarding what portion of husband's Employee Savings Plan wife is entitled to.

GRIMM, P.J., and PUDLOWSKI, J., concur.